**Mitchell A. NEWBERGER, Plaintiff-Appellant,**

v.

**UNITED STATES MARSHALS SERVICE, et al., Defendants-Appellees.**

No. 83–3701.

United States Court of Appeals, Eleventh Circuit.

Jan. 28, 1985.

Claude H. Tison, Jr., Tampa, Fla., for plaintiff-appellant.

Lynne L. England, Asst. U.S. Atty., Tampa, Fla., Richard A. Olderman, Barbara L. Herwig, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and PECK *, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge:

Plaintiff-appellant Mitchell Newberger appeals from summary judgment for the defendants. The United States District Court for the Middle District of Florida, George C. Carr, District Judge, granted summary judgment on the ground that appellant did not file his suit within the period of even the most generous statute of limi-

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

tations, which would have allowed four years for bringing the suit. We affirm on this ground, but also conclude that appellant's suit is barred by his failure to exhaust his administrative remedies.

On appeal from summary judgment, we view the facts in the light most favorable to appellant. *See, e.g., Melancon v. Insurance Co. of North America,* 482 F.2d 1057, 1059 (5th Cir.1973); *Tabacalera Severiano S.A. v. Standard Cigar Co.,* 392 F.2d 706, 707 (5th Cir.), *cert. denied,* 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968). The facts, considered in this light, are as follows: Mitchell Newberger (Newberger) was a career employee of the United States Marshals Service (Service). In July, 1973, Newberger was appointed by the President to a four-year term as United States Marshal for the Middle District of Florida. At the conclusion of his term in August, 1977, Newberger returned to a position of Deputy United States Marshal. Before deciding to return to this position, Newberger discussed his situation with his successor, George R. Grosse, with John W. Tatum, the Chief Deputy Marshall for the Middle District, and with William E. Hall, the Director of the United States Marshals Service. They agreed that Newberger would receive the highest level of compensation authorized for a deputy marshal, that he would work in the Tampa office, and that he would receive favorable consideration for the position of Supervisory Deputy United States Marshal. They also agreed that Newberger would perform normal field duties, in spite of the fact that a back injury caused him some difficulty in performing field work.

In September, 1977, one month after reassuming his deputy duties, Newberger aggravated his back injury. Newberger's doctor advised him that he could continue to work but should avoid particularly strenuous duties. He also instructed Newberger to undergo a program of physical therapy.

At the beginning of 1978, Grosse offered Newberger the position of Supervisory Deputy United States Marshal in Orlando. Newberger declined, saying he preferred to wait for a possible vacancy in the same position in the Tampa office.

Shortly after this discussion, Newberger began to notice a number of acts of misconduct by his fellow deputies, all of which he reported to his superiors. His superiors, however, told him that they did not regard the reported behavior as serious, and directed him to cease causing dissension. If he reported any further instances of misconduct by other deputies, they told him, they would transfer him out of the Tampa office. The supervisors then began to harass Newberger in the hope that he would find his position untenable and choose to resign. Finally, acting on his doctor's advice, Newberger applied to the United States Civil Service Commission (the Commission) for retirement on the ground of medical disability. Newberger filed this application on May 26, 1978, and went on leave immediately. On July 17, 1978, the Commission granted Newberger's request. Newberger did not officially leave the Service, however, until August 8, 1978, when he resigned as deputy marshal in order to campaign for sheriff of Hillsborough County.

Newberger never filed any action with the Civil Service Commission's Federal Employee Appeals Authority, in spite of the fact that the regulations in effect at the time [1], 5 C.F.R. 752.203 (1977), authorized actions by employees who suffered from adverse agency action, with judicial review of adverse decisions available under 5 U.S.C. § 702 (1976) and 28 U.S.C. § 1346 (1976). Newberger did, however, file suit in the United States District Court for the Middle District of Florida on August 6, 1982, alleging that defendants had conspired, in violation of the First Amendment and of 42 U.S.C. § 1985(1) (1976), to procure his resignation. The court granted

---

**1.** The Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (1978), which substantially restructured the review system for discharge of civil service employees, went into effect on January 11, 1979. *Id.*

summary judgment on the ground that the plaintiff's time for filing the suit under the four-year Florida statute of limitations for intentional tort actions had expired on May 26, 1982, four years after he had submitted his letter of resignation.

Newberger agrees that the governing statute of limitations is the four-year statute governing intentional torts. He argues, however, that the limitation period did not expire until August 8, 1982, four years after his resignation became final.

■ 42 U.S.C. § 1985(1) provides a cause of action to a federal officer who is the victim of a conspiracy to prevent him from performing his duties or to injure him in retaliation for performing them. It does not, however, provide a statute of limitations for such actions. The First Amendment, of course, does not have an explicit statute of limitations for actions brought under it, either. Accordingly, the federal courts apply the most analogous state statute of limitations to such cases. *See, e.g., Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Carmicle v. Weddle,* 555 F.2d 554, 555 (6th Cir.1977) (per curiam); *Peterson v. Fink,* 515 F.2d 815, 816 (8th Cir.1975). The statute chosen is that which best effectuates the federal policy underpinning the asserted claims. *Peterson, supra* at 816.

We should note that the choice of statutes is not a matter of the federal courts being controlled by state law under the *Erie* doctrine, which applies only to diversity suits; rather it is a matter, as the above discussion indicates, of the courts borrowing state law as an act of federal common law, so as to fill the interstices of federal law. Similarly, the determination of the time at which a cause of action to enforce a federal right accrues is a federal question. *Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1341–42, 91 L.Ed. 1602 (1947); *Rawlings v. Ray,* 312 U.S. 96, 98, 61 S.Ct. 473, 474, 85 L.Ed. 605 (1941). Thus the district court was free to determine both which statute of limitations applied and when the cause of action accrued as a matter of federal law, without being bound by rulings of the Florida courts. The district court's duty was to decide these questions in the way which best serves the federal policy behind appellant's cause of action. On appeal, our duty is the same. In doing so, however, we recognize that the interpretations of Florida statutes by Florida courts, which have long experience in interpreting these statutes, are entitled to great weight in deciding what Florida law to apply.

The first issue for us to determine is which of the Florida statutes of limitation is most nearly analogous to the claims appellant has presented. Plaintiff-appellant's complaint alleged a conspiracy to make his job intolerable so that he would choose to resign. It sought an injunction "reinstating the plaintiff to a supervisory or administrative position in the Marshals Service." It also asked the court to "award the plaintiff damages by him sustained, including but not limited to lost wages, medical expenses, and damages for pain, suffering and other intangible injury ..." Newberger Complaint, Final Paragraph.

■ Five provisions in the Florida statute of limitations arguably are analogous to appellant's cause of action. Fla. Stat. 95.11(3)(f), which provides a four-year limitation period, covers actions founded on statutory liability—arguably analogous, since appellant's cause of action arises from a federal statute. Fla.Stat. 95.11(3)(o) provides a four-year statute of limitations for intentional torts. Fla.Stat. 95.11(3)(p) provides a four-year statute for "any action not specifically provided for in these statutes." A two-year statute is provided by Fla.Stat. 95.11(4)(c) for "[a]n action to recover wages or overtime or damages or penalties concerning payment of wages or overtime." Finally, Fla.Stat. 95.11(5)(a) provides a one-year statute of limitation for actions for specific performance of contracts.

Although in some respects appellant's suit, seeking relief which would put into effect the basic terms of an alleged oral agreement he had with officials of the Ser-

vice, resembles an action founded in contract, we are not convinced that this cause of action is most closely analogous to an action for specific performance of a contract. Appellant's essential claim is not that appellees breached an agreement, but that they conspired to injure him in violation of federal law. A stronger case can be made for the application of the two-year statute of limitations for an action to recover wages, given that appellant seeks back pay as a key remedy. This court has previously adopted this statute in employment discrimination cases. *McGhee v. Ogburn*, 707 F.2d 1312 (11th Cir.1983); *McWilliams v. Escambia County School Board*, 658 F.2d 326 (5th Cir.1981). There is a difficulty with applying this statute in the present case, however. Appellant received, not wages, but a salary, as compensation for his service as a deputy marshal. The Florida courts in recent years have construed the wage claim statute as not applying to causes of action for payment of salary. *Broward Builders Exchange, Inc. v. Goehring*, 231 So.2d 513 (Fla.1970); *Parker v. Thomas*, 185 So.2d 511 (Fla.App. 1966); *cf. France v. Ross*, 165 So.2d 780 (Fla.App.1964) (statute does not cover engineering firm's claim for a fee). In *Broward*, the Florida Supreme Court squarely held that "an action seeking recovery of a salary allegedly withheld does not fall within the terms 'suit for wages' within the intent of F.S. § 95.11(7)(b) [the predecessor to Fla.Stat. 95.11(4)(c) ]." The court went on

to note that there are special problems in preserving evidence with respect to hourly wage claims, problems which do not generally exist in salary actions, making the distinction a logical one. *Id.* at 515. As we have observed, we are not bound to choose the statute of limitations a Florida court would choose, as we would be, under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), if this were a diversity action. We consider the reasoning of the *Broward* court, however, to be sound and entitled to deference. Like the district court, we are not convinced that the two-year statute of limitations for wage claims controls this action.[2]

We conclude that the district court had a sound basis for its decision to apply the four-year statute of limitations. Appellant's action is one for conspiracy. In *Faulk v. Allen*, 152 Fla. 413, 12 So.2d 109 (1943), the Florida Supreme Court squarely held that actions for conspiracy in Florida are governed by the four-year statute of limitations, observing, "We do not feel the question is open in this state ..." *Faulk*, *supra*, 152 Fla.2d at 416, 12 So.2d at 110–11. In addition to the fact that application of the four-year statute governing intentional torts to this action for conspiracy is consistent with the interpretation of Florida law by Florida's highest court, the statute seems to fit most closely to plaintiff's action. Conspiracy to injure another is a ground for liability in tort. *See generally*, W. Prosser, The Law of Torts § 46 (4th ed.

**2.** *McGhee v. Ogburn*, 707 F.2d 1312 (11th Cir. 1983), would not compel a different conclusion. In *McGhee*, this court applied the two-year Florida statute of limitations for wage claims to an hourly employee's employment discrimination claim. The *McGhee* court noted, however, that different limitation statutes may apply to claims under the same federal statute "if the 'essential nature' of the claims differ." 707 F.2d at 1313. Here, there are two important distinctions from the situation in *McGhee*. First, this action is brought under § 1985, and alleges a conspiracy against a federal officer, whereas *McGhee* was a racial discrimination claim brought under §§ 1981 and 1983. Second, the plaintiff in *McGhee* was an hourly employee working for wages, whereas appellant in the present case worked for a salary. *McGhee* discussed *Broward* without alluding to the *Broward* distinc-

tion between wage and salary claims for limitation purposes. Here, the distinction is crucial. In *McWilliams v. Escambia County School Board*, 658 F.2d 326 (5th Cir.1981), on the other hand, the former fifth circuit applied the two-year statute of limitations for wage claims to an employment discrimination claim by a salaried employee. *Id.* at 329–30. If the result in the present case turned on the question of what statute of limitations to apply, we would be faced with the difficult question of whether we ought to reexamine *McWilliams*. We would then have to seek the best way to reconcile our respect for Florida courts' interpretation of Florida law with our commitment to stare decisis. Given, however, that we find appellant's claim would be barred by the four year statute of limitations as well, it is unnecessary for us to resolve this issue.

1971). The behavior appellant alleges defendants committed was intentional in character, i.e., an intentional tort. The statute of limitations for intentional torts would seem to be, as the district court held, the correct one to apply.

■ Even with the benefit of this more generous statute of limitations, the district court concluded that plaintiff still failed to file his action in timely fashion. The district court held that a cause of action for conspiracy accrues at the time the conspiracy is terminated, either by abandonment or by achievement of its objective. We are unable to find authority to support this proposition. The rule of *Timmins v. Firestone*, 283 So.2d 63 (Fla.App.1973), cited by the district court to support its holding, would seem rather to be that a cause of action for conspiracy accrues when the last act in furtherance of the conspiracy is committed. In the present case, however, it does not matter whether appellant's action is held to have accrued when the last acts in furtherance of the conspiracy were committed or, as the district court held, when the conspiracy achieved its objective of making "the conditions of [appellant's] employment so intolerable as to force his retirement from the United States Marshals Service" (Newberger Complaint, ¶ 17). In either event, the cause of action accrued no later than May 26, 1978, when Newberger filed an application for retirement from the Service, as appellant did not allege any acts in furtherance of the purported conspiracy after that date.[3]

Appellant argues that the conspiracy did not achieve its objective until his retirement became effective on August 8, 1978. Before this date, he contends, he could have altered his decision to retire. Assuming this contention to be true, it would not help appellant. He was always free to attempt to undo his decision to retire. He attempted to do so, in fact, even after his retirement became final, by filing the present action for reinstatement to his former position. The point of the conspiracy alleged by appellant was not to achieve a state where appellant could never again decide to work for the Service; it was to induce him to resign his position. He made this decision on May 26, 1978, when he filed his application for disability retirement. After this date, all that remained was for the Civil Service Commission to act on appellant's application. Appellant has not alleged that the conspirators tried to influence the Commission's decision, or that they could have done so. The so-called conspirators concluded their involvement, and achieved the only objective they could have hoped to achieve, when appellant announced his retirement on May 26, 1978. Thus even under the most liberal possible statute of limitations, appellant's cause of action became barred by the statute of limitations on May 26, 1982, over two months before he filed his suit.

■ Even if appellant's action were not barred on limitation grounds, it would be barred by his failure to exhaust his administrative remedies. Appellant alleged that he chose to resign, not of his own free will, but as a result of pressure by his superiors. The Court of Claims, in 1975, said that it is "hornbook law ... that an involuntary resignation constitutes adverse agency action" entitling an aggrieved employee to a review by the Civil Service Commission. *Gratehouse v. United States*, 512 F.2d 1104, 1108, 206 Ct.Cl. 288 (1975). As we have shown, procedures were in effect at the time of appellant's resignation under which he could have received such a review. 5 C.F.R. 752.203 (1977). Because

---

**3.** It does appear that the timing of appellant's resignation was precipitated by the fact that he became a political candidate in July, 1978, and the Director of the Service, a co-defendant in this case, informed him that his candidacy violated Civil Service rules and that he would either have to abandon it or face disciplinary action. The Director's enforcement of Civil Service regulations, however, could hardly be regarded, under any construction, as a conspiratorial act. If anything, the fact that appellant chose to become a candidate for public office before his resignation became final would indicate, contrary to the position he now asserts, that his decision to leave the Service became final prior to the date on which the resignation actually became effective.

appellant failed to seek relief first from the appropriate administrative agency, the exhaustion doctrine would now bar him from seeking relief from the courts.

In conclusion, we find that appellant's cause of action was barred by the statute of limitations, even if he is given the benefit of the doubt by applying the most liberal possible statute of limitations, as the district court did. His cause of action is also barred by his failure to exhaust his available administrative remedies. The action of the district court in dismissing his suit accordingly must be affirmed.

AFFIRMED.

Clark, Circuit Judge, filed dissenting opinion.