Dr. Robert R. FREEMAN, et al., Plaintiffs,

v.

Lauro CAVAZOS, et al., Defendants.

Dr. Robert R. FREEMAN, et al., Plaintiffs,

v.

Lauro CAVAZOS, et al., Defendants.

Civ. A. Nos. 90–2175–LFO, 90–2387–LFO.

United States District Court, District of Columbia.

Sept. 20, 1990.

Motion for Reconsideration Denied Oct. 5, 1990.

MEMORANDUM

Filed Sept. 20, 1990.

OBERDORFER, District Judge.

Plaintiff Robert R. Freeman is the superintendent of the DeKalb County School District ("School District"), located in and around Atlanta, Georgia. Along with the School District, in his official capacity he sues Defendants Lauro Cavazos, Secretary of the Department of Education, and the United States Department of Education ("the Department"). Before the Court now is a motion for a temporary restraining order. For the reasons stated below, this motion is denied.

I.

This action arises out of a longstanding dispute between the School District and the Department. Since the end of the 1970s, the Department has received complaints concerning the School District's provision of services to disabled students. Operating under the authority of regulations promul-

gated pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Department's Office of Civil Rights ("OCR") has attempted to investigate these complaints. The School District has refused to allow these investigations because, it claims, the regulations promulgated under Section 504 exceed the authority of that Section and conflict with the procedures Congress mandated in the Education of the Handicapped Act. *See* 20 U.S.C. § 1400, *et seq.* (1988) ("EHA").

The dispute reached a head in 1984 when the OCR commenced administrative proceedings to require compliance with OCR regulations. The School District initially sought to enjoin these proceedings on the theory that the regulations were issued without proper authority. It filed suit in the District Court for the Northern District of Georgia, where the School District is located. The District Court dismissed the School District's suit for lack of subject matter jurisdiction due to the failure to exhaust administrative remedies. *See* Order, *Rogers v. Bennett*, No. 86–1304A (N.D.Ga. Sept. 30, 1987). That decision was affirmed upon appeal in *Rogers v. Bennett*, 873 F.2d 1387 (11th Cir.1989). The plaintiffs accordingly returned to the administrative proceedings which had been stayed pending the federal actions. The ALJ held the plaintiffs were "not in compliance with the requirement of Section 504 of Rehab. by reason of its failure to permit OCR access to information necessary to ascertain compliance with Section 504." Initial Decision of the Presiding Officer at 17, *In re DeKalb County School District* (U.S. Dep't of Education April 26, 1990), *included in* Plaintiff's Memorandum in Support of Motion for a Temporary Restraining Order, Attachment 4. The decision did not address plaintiffs' challenge to the propriety of the regulations promulgated under Section 504. Since more than twenty days lapsed without an appeal after the ALJ's decision, that decision constitutes final agency action subject to review by this Court. *See* 34 C.F.R. § 101.104(a) (1989).

On August 3, 1990, the Secretary of Education submitted a report on this matter to the appropriate committees of the House and Senate as required by 42 U.S.C. § 2000d–1 (1988). On September 14, 1990, the Department informed the School District

> all Federal financial assistance to De-Kalb, available directly from the U.S. Department of Education, or disbursed through the Georgia Department of Education, under elementary and secondary and adult education programs, including vocational education programs at the elementary and secondary level, is terminated effective immediately.

Letter, M. Williams to R. Freeman, September 14, 1990 at 1, *included in* Defendants' Memorandum in Opposition to a Motion for a Temporary Restraining Order, Exhibit 2. Plaintiffs Freeman and the School District filed this motion for a temporary restraining order that day.

## II.

Our Court of Appeals has stated that [t]o determine whether an injunction is appropriate the District Court should balance (1) the likelihood of the plaintiff's success on the merits, (2) the threat of irreparable injury to the plaintiff in the absence of an injunction, (3) the possibility of substantial harm to other interested parties from a grant of injunctive relief, and (4) the interests of the public. *Wagner v. Taylor*, 836 F.2d 566, 575 (D.C. Cir.1987) (footnote omitted). The plaintiffs have failed to show the threat of irreparable injury during the finite period before the case can be decided on the merits and they have failed to show plainly a likelihood of success on the merits.

Although courts consider several different factors in determining whether to grant preliminary injunctive relief, "[t]he basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). The harm "must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.Cir.1985). Moreover, it must also be irreparable:

Mere injuries, however, substantial, in terms of money, time and energy necessarily expended in the absence of a [TRO] are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958).

█ Plaintiffs in this case have not shown plainly that they will be irreparably injured if a temporary restraining order is not imposed. The School District stands to lose funding for many of its programs, but has failed to establish that the impact of that loss will be felt before next year because funds have already been appropriated funds for this year's operations. Plaintiff's Motion for a Temporary Restraining Order at 17; Affidavit of Dr. Freeman at 4–5. Consequently, a refusal to grant this motion will have no direct effect on the School District's ability to operate during this school year. A motion for a preliminary injunction, indeed even a decision on the merits, could be in place well before the end of the school year in June, or even the beginning of the budgeting process in the spring of next year. There is little danger that in the interim the funds in question will be irrevocably lost. The Department has stipulated that it will not disburse these funds elsewhere pending resolution of this case. *See* Defendants' Memorandum in Opposition to Motion for a Temporary Restraining Order at 18. Furthermore,

> it is well settled that federal courts may award appropriated funds to a successful litigant even after the statutory lapse date if, as here, the suit was initiated on or before that date.

*Population Institute v. McPherson,* 797 F.2d 1062, 1081 (D.C.Cir.1986) (citing *Connecticut v. Schweiker,* 684 F.2d 979, 996–99 (D.C.Cir.1982)). Accordingly, the School District has failed to show that it will not receive the terminated funds if it eventually succeeds on the merits of its claim.

At oral argument, counsel for plaintiffs contended that denial of a TRO would have an irreparable indirect effect. Specifically, counsel argued that denial of the TRO would force the School District to make budget cuts in anticipation of the termination, and the specter of such cuts may, among other things, induce certain teachers to seek employment elsewhere. These contentions are speculative. The School District has not demonstrated the necessity to make irrevocable budgetary decisions during the time it will take a court to hear and rule on a motion for a preliminary injunction, nor that teachers will seek and find alternative employment, much less commit themselves to it, during that period. Uncertainty and the risk of losing millions of dollars in federal funding can certainly be harmful, but plaintiffs have failed to make an adequate showing that such harm will be irreparable.

The failure of the plaintiffs to show irreparable harm constitutes sufficient grounds for denial of plaintiffs' motion. Furthermore, even if this failure were not enough alone, plaintiffs have not shown a sufficiently clear likelihood of success on the merits to warrant injunctive relief. On the merits, this case presents a complicated question concerning the interaction of two statutes, the EHA and Section 504. It is difficult to determine at such an early stage of this litigation whether or not the plaintiffs are likely to prevail on the ultimate merits. As the Eleventh Circuit observed in the earlier incarnation of this matter,

> the authority to issue regulations under section 504 is not entirely clear. Nevertheless, ... the Department was not *plainly* without authority in so acting.

*Rogers,* 873 F.2d at 1394 (emphasis in original and footnote omitted).

There has been an opportunity, however, to make a tentative judgment that plaintiffs are not likely to prevail on their contention that this action lies in this court as distinguished from the United States District Court for the Northern District of Georgia, or the Court of Appeals for the Eleventh Circuit. Resolution of the jurisdictional challenges brought by the Department again involves some apparently original questions of statutory interpretation. Section 504 incorporates by reference Title

VI enforcement procedures which in turn provide that judicial review shall be determined by looking to the review provisions for "similar action[s] taken by such department or agency on other grounds." 42 U.S.C. § 2000d–2 (1988). Both parties have provided plausible options, and it cannot be said that one option is clearly superior.

There is, however, an additional question, the answer to which is clearer: the question of venue. *See* 28 U.S.C. § 1404(a) (1988). In determining whether to transfer this case, it is probative that plaintiffs are a Georgia public body and a Georgia public official, that they filed their first complaint on the subject in the United States District Court for the Northern District of Georgia, and that they appealed that court's adverse decision to the United States Court of Appeals for the Eleventh Circuit. Moreover, in affirming the District Court's dismissal of this earlier complaint, the Eleventh Circuit specifically contemplated the possibility that after the administrative process had run its course defendants might terminate federal funding of plaintiffs' program—as has now occurred. Said the Court of Appeals:

> Requiring exhaustion will not preclude the appellants from having an opportunity to dispute the OCR's jurisdiction to investigate alleged violations of section 504: should the Department eventually terminate federal funding for the Georgia special education programs, the educators can appeal the agency's action *by refiling this suit in the district court.*

*Rogers v. Bennett,* 873 F.2d at 1394 (emphasis added).

It's also important that the briefs and arguments suggest this controversy is of conspicuously local interest, i.e. local to De-Kalb County and the State of Georgia. At argument, plaintiffs contended that the sole question was the validity of defendants' regulations with respect to what it describes as "affirmative action." But, in another phase of the argument, plaintiffs indicated that the controversy involves complaints of particular parents in Georgia about particular actions and about these particular plaintiffs' refusal to permit defendants' investigation of local parental complaints. Also, in all candor, there are emanations of forum shopping in the plaintiffs' decision to file in this court rather than in the court which has familiarity with this action. Finally, the preference for administration of this case in one of the federal courts in Georgia is not diminished by the Supreme Court's decision in *Bowen v. American Hospital Ass'n,* 476 U.S. 610, 106 S.Ct. 2101, 90 L.Ed.2d 584 (1986). That case originated in a district court but it was the District Court for the Southern District of New York, the corporate home of at least one of the plaintiffs in that case.

Defendants' motion to dismiss and plaintiffs' opposition to that motion are now before the Court, and there has been an extensive argument. In the argument, plaintiffs indicated an intention to take up to twenty depositions and to raise factual questions which might not be resolvable by summary judgment. In the circumstances, resolution of the venue issue would be facilitated by proffers or affidavits about the convenience of the parties and witnesses and the interest of justice in further proceedings in the District Court or the Court of Appeals in Georgia rather than in this district and circuit. *See* 28 U.S.C. § 1391(e) (1988) (authorizing plaintiffs to bring a civil action against an employee of the United States acting in his official capacity in any judicial district in which, among other things, the cause of action arose or the plaintiff resides); *see also* 28 U.S.C. §§ 1402 and 1404(a) (1988). Accordingly, the accompanying Order will deny plaintiffs' motion for a temporary restraining order and invite the parties to submit simultaneous supplemental briefs addressing the jurisdiction and venue questions of whether this matter should be dismissed or transferred either to the Court of Appeals for the Eleventh Circuit or to the District Court for the Northern District of Georgia.

## ORDER

### Filed Oct. 5, 1990

For the reasons stated in the accompanying memorandum, it is this 4th day of October, 1990, hereby

ORDERED: that defendants' motion to dismiss should be, and is hereby, granted; and it is further

ORDERED: that plaintiffs' complaint should be, and is hereby, dismissed without prejudice.

## MEMORANDUM

### Filed Oct. 5, 1990

As was more fully developed in a Memorandum filed in this matter on September 20, 1990, plaintiffs seek judicial review in this district court of a decision by defendant Department of Education terminating grants to plaintiffs pursuant to the Rehabilitation Act of 1973.[1] Since jurisdiction lies not in this district court but in the United States Court of Appeals for the Eleventh Circuit, defendants' motion to dismiss the complaint and their motion to dismiss the separate petition for writ of mandamus must be granted. This Court's lack of jurisdiction also requires denial of plaintiffs' urgent October 4, 1990 motion for reconsideration of a September 20, 1990 Order which denied their application for a Temporary Restraining Order.

■ The Rehabilitation Act makes no separate provision for relief of persons aggrieved by any act or failure to act by a federal provider of grants. Instead, the Rehabilitation Act makes available to any such person the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964.[2] That Act provides for judicial review of final agency action, such as the termination of a grant, but does not specify where any application for judicial review will lie. Instead, the Civil Rights Act provides that an agency's act, such as termination, "shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds."[3] Most grant statutes administered by defendant Department of Education which allow for termination of funding incorporate by reference the judicial review provisions of the General Education Provisions Act (GEPA).[4] GEPA authorizes review of agency determinations "with the United States Court of Appeals for the circuit in which that recipient is located."[5] Similarly, with one exception,[6] other grant programs not incorporating GEPA also provide for review of termination actions by the Court of Appeals in which the recipient resides.[7] Therefore, review of the Department of Education's termination of the grants to plaintiffs lies in the circuit in which plaintiff resides, the Eleventh Circuit. It is well settled that in the absence of a specific grant of concurrent jurisdiction a grant of jurisdiction to the courts of appeal is exclusive. *See Whitney National Bank v. Bank of New Orleans*, 379 U.S. 411, 420, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965); *Myers v. Bethlehem Shipbuilding*

1. Rehabilitation Act of 1973 is codified at 29 U.S.C. § 701 *et seq.* The Act provides for a variety of protections and services for disabled individuals. *See* 29 U.S.C. § 701 (1988). Section 504 of the Act, which is codified at 29 U.S.C. § 794 *et seq.*, is the focus of this litigation. That section prohibits discrimination against qualified handicapped individuals "under any program or activity receiving Federal financial assistance." *Id.* § 794. Since the research, training and services provided by other sections of the Rehabilitation Act are not at issue in this case, for simplicity's sake, references to the Rehabilitation Act are to the nondiscrimination provisions of that Act.

2. *See* 29 U.S.C. § 794a(a)(2) (1988). The procedures for title VI are found in §§ 601–05 of the Act. *See* The Civil Rights Act of 1964, Title VI, Pub.L. 88–352, §§ 602–05, July 2, 1964, 78 Stat. 252 (1965). These procedures are currently codified at 42 U.S.C. §§ 2000d–1 – d–4 (1988).

3. 42 U.S.C. § 2000d–2 (1988).

4. *See* 20 U.S.C. § 1221 *et seq.* (1988).

5. 20 U.S.C. § 1234g(b) (1988).

6. The exception is the Educational Agencies Financial Aid Act, commonly known as the Impact Aid Act. *See* 20 U.S.C. § 236 *et seq.* (1988). The DeKalb County School District receives slightly more than $30,000 in Impact Aid funds, which constitutes less than one percent of the more than six million dollars in federal funds received by the District under Department-of-Education-administered funds. *See* Affidavit of Thomas P. Skelly ¶¶ 4–7 (September 7, 1990) *included in* Defendant's Motion to Dismiss, Exhibit 3.

7. *See* 20 U.S.C. § 2464(c)(1) (1988) (The Vocational Education Act); 20 U.S.C. § 2834(a). (1988) (The Elementary and Secondary Education Act); *see also* 110 Cong.Rec. 7060–61 (April 7, 1964) (remarks of Senator Pastore) (citing as a similar action the School Facilities Construction Act, 20 U.S.C. § 641(b), which provides for "judicial review on the record, in the United States court of appeals for the circuit in which the local educational agency is located").

*Corp.,* 303 U.S. 41, 48, 58 S.Ct. 459, 462, 82 L.Ed. 638 (1938); *Telecommunications Research and Action v. FCC,* 750 F.2d 70, 77 (D.C.Cir.1984); *see also Public Utility Comm'r of Oregon v. Bonneville Power Administration,* 767 F.2d 622, 626 (9th Cir.1985); *Drummond Coal Co. v. Watt,* 735 F.2d 469, 475 (11th Cir.1984); *Gardner v. State of Alabama,* 385 F.2d 804, 810 (5th Cir.1967). As a consequence, this Court does not have jurisdiction over the specific termination here challenged by plaintiffs.

■ In addition to challenging that termination, plaintiffs also challenge the power of the Department of Education to promulgate under the Rehabilitation Act the regulations relied upon the Department as authority for the Office of Civil Rights' investigation and ultimate termination of its grants to plaintiffs. They contend that this "facial challenge" is cognizable in a district court because it is sufficiently separate from the challenge to the termination proceedings to escape the review provisions of the Rehabilitation Act. This contention was necessarily considered by the Eleventh Circuit in an earlier phase of plaintiffs' effort to obtain relief from the actions of the Department of Education's Office of Civil Rights. *See Rogers v. Bennett,* 873 F.2d 1387, 1391 (11th Cir.1989) ("The Georgia educators therefore sought a declaration that such investigations were beyond the agency's jurisdiction and an order enjoining the OCR from investigating the complaints."). The Eleventh Circuit refused to address either challenge before plaintiffs had exhausted their administrative remedy. This holding is either res judicata or law of the case. In any event, the *Rogers* ruling controls here.

More fundamentally, plaintiffs have not cited any relevant precedent to support their assertion that their challenge to the defendants' authority under the Rehabilitation Act can be maintained separately from their challenge to the specific termination. Their reliance upon *Mayor and City Council of Baltimore v. Mathews,* 562 F.2d 914, 921 (4th Cir.1977), is misplaced. The *Mayor* Court allowed an administrative proceeding to be stayed by a district court because the agency was plainly without authority. The Eleventh Circuit determined in *Rogers,* however, that the Department of Education was not "plainly" without authority in the circumstances here. *See Rogers v. Bennett,* 873 F.2d at 1393–96. Plaintiffs' citation of *Bowen v. American Hosp. Ass'n,* 476 U.S. 610, 106 S.Ct. 2101, 90 L.Ed.2d 584 (1986) is also inapposite. *Bowen* involved a challenge to a newly promulgated regulation whereas the regulation here has been in force for a decade.

Accordingly, accompanying orders will grant defendants' motions to dismiss and deny plaintiff's motion for reconsideration of the September 20, 1990 denial of their application for a temporary restraining order.

## ORDER
### Filed Oct. 5, 1990

Plaintiffs filed a motion for summary judgment in this action for a writ of mandamus seeking to prohibit defendants from implementing the termination of funds to plaintiff DeKalb County School District. Defendants opposed and moved to dismiss based upon this Court's alleged lack of jurisdiction over agency actions. A memorandum issued today determined that this Court did not have jurisdiction to review either plaintiffs' appeal from defendants' termination proceedings nor plaintiffs' related facial challenges to defendants' authority. Because this Court lacks jurisdiction over the underlying cause, this mandamus action must also be dismissed. *See Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 77–78 (D.C.Cir.1984). Accordingly, it is this 4th day of October, 1990, hereby

ORDERED: that plaintiffs' motion for summary judgment should be, and is hereby, DENIED; and it is further

ORDERED: that defendants' motion to dismiss should be, and is hereby, GRANTED; and it is further

ORDERED: that defendants' cross-motion for summary judgment should be, and is hereby, DENIED AS MOOT; and it is further

ORDERED: that plaintiffs' application for a writ of mandamus should be, and is hereby, DISMISSED WITHOUT PREJUDICE.

ORDER ON MOTION FOR
RECONSIDERATION

Filed Oct. 5, 1990

Plaintiffs have filed a motion for reconsideration of this Court's denial of its motion for a temporary restraining order. For the reasons stated in a memorandum filed this day, this Court does not have subject matter jurisdiction over this matter. Accordingly, it is this 4th day of October, 1990, hereby

ORDERED: that plaintiffs' motion for reconsideration should be, and is hereby, denied.