Sheeler v. Select Energy                    CV-03-059-JD   07/28/03

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


William J. Sheeler

    v.                                    Civil No. 03-59-JD
                                      Opinion No. 2003 DNH 132

Select Energy and NEChoice, LLC


O R D E R


The plaintiff, William J. Sheeler, brings claims against Select Energy and NEChoice, LLC., arising from the circumstances of Sheeler's discharge from employment with Select Energy. Select Energy moves to dismiss Sheeler's claim in Count VII, brought under New Hampshire Revised Statutes Annotated ("RSA") chapter 339-E. NEChoice moves to dismiss all of the claims brought against it. Sheeler objects to both motions.


Standard of Review

In considering a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 63 (1st Cir. 2002). The court must determine whether the complaint, construed in the proper light, "alleges facts sufficient to make out a cognizable claim." Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002). All that is required

is a short and plain statement of the claim.  See Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 473 (1st Cir. 2002) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).

Background

William Sheeler was employed by Select Energy as an account executive from November of 1997 through December of 1999.  His job included retail sales and marketing of deregulated electric and gas energy products and energy conservation products.  Select Energy provided Sheeler and other account executives with the "Select Energy Retail Sales Plan – 1999" ("Compensation Plan").  Under the terms of the Compensation Plan, Select Energy agreed to pay wages and commissions.  Sheeler received a base salary and commissions based on his sales.  The Plan was an incentive to account executives to vigorously pursue contracts to benefit Select Energy.

Select Energy entered one or two service contracts with NEChoice and the Massachusetts Municipal Association.  Those contracts gave NEChoice the right to approve or disapprove any sale, offer to sell, or contract for retail electricity or energy services by Select Energy to any municipal entity.  In February of 1999, Sheeler was directed by Select Energy to pursue an opportunity with the Cape Light Compact to negotiate a contract for energy services.  The Cape Light Compact was a group of

twenty-one towns and two counties established in 1997 to secure the lowest cost energy supply for metered customers in its member towns and counties.

In response to Sheeler's efforts, the Cape Light Compact submitted a "Request for Proposal" to Select Energy. At a preliminary meeting in February of 1997, the Cape Light Compact indicated that it did not want to do business with NEChoice and did not want NEChoice to participate in the bid process with Select Energy. The participants at the meeting agreed that Select Energy would proceed directly with the Cape Light Compact and that NEChoice would proceed, if at all, with its own bid process. A representative of NEChoice was contacted by telephone and was informed of the arrangement between Select Energy and the Cape Light Compact. Sheeler asked that the agreement that NEChoice and Select Energy would proceed independently in the bid process be submitted in writing to NEChoice and assumed that was done. The Cape Light Compact required Select Energy and NEChoice to sign disclosure agreements that there would be no collusion in the submission of bids.

Sheeler, on behalf of Select Energy, and the Cape Light Compact entered into negotiations. Sheeler found that the Cape Light Compact was negotiating exclusively with Select Energy and was excluding NEChoice. Sheeler and the Select Energy negotiation team considered NEChoice as a competitor.

Nevertheless, a Select Energy supervisor told Sheeler that all of Select Energy's information for the bid process was to be shared with NEChoice.

The negotiations resulted in a revised proposal in April of 1999. The Cape Light Compact requested a rebid from Select Energy, which it provided in mid-May. NEChoice did not request or participate in the rebid process and was upset that Select Energy had done so without notifying NEChoice. The Select Energy proposal represented approximately $270,000,000.00 in prospective sales, $9,000,000.00 in profit to Select Energy, and $1,200,000.00 as a sales commission for Sheeler.

On May 19, 1999, NEChoice asserted a right to control any bid submitted by Select Energy, under the agreement between them, and notified both the Cape Light Compact and Select Energy that it would prohibit the agreement under Select Energy's bid. NEChoice's actions delayed execution and implementation of Select Energy's agreement with the Cape Light Compact. Discussions took place between May and September of 1999 as to NEChoice's asserted right to derail the agreement between Select Energy and the Cape Light Compact. The deadlines in that agreement were in danger of expiring.

Sheeler learned in late September of 1999 that the Cape Light Compact had hired counsel who sent a letter threatening suit against both Select Energy and NEChoice. In the letter,

4

counsel for the Cape Light Compact represented that Sheeler stated during July that it was too bad that NEChoice interfered with the agreement between the Compact and Select Energy. A meeting was held in late September, and NEChoice and Select Energy decided to join in their defense against the claims raised by the Cape Light Compact. After the meeting, Sheeler was excluded from any further participation in the matter.

On November 5, 1999, Sheeler received notice that his employment with Select Energy would be terminated on or about December 26, 1999. Sheeler was terminated on December 31, 1999. Sheeler believed that all contract negotiations with the Cape Light Compact had ended. All sales personnel, except one, who were involved in the proposed Cape Light Compact agreement were also discharged. On March 7, 2000, the Cape Light Compact and Select Energy announced that a contract had been negotiated and signed. Media reports of the agreement indicated that the terms were the same as those negotiated by Sheeler.

Sheeler brought suit in state court on December 23, 2002. The defendants removed the action to this court. Sheeler filed an amended complaint on June 10, 2003.

## Discussion

Sheeler alleges claims of breach of contract, wrongful discharge, civil conspiracy, and violation of RSA chapter 275 and

chapter 339-E against Select Energy.  He alleges claims of tortious interference with contract and civil conspiracy against NEChoice.  Select Energy moves to dismiss the claim based on RSA chapter 339-E.  NEChoice moves to dismiss all claims against it.[1]

I.   Select Energy's Motion to Dismiss

Select Energy contends that the claim under RSA Chapter 339-E, Count VII, is not actionable because Sheeler was an employee. Sheeler acknowledges that RSA chapter 339-E provides a cause of action for a "sales representative," but not for an employee. See RSA 339-E:1, III; John A. Cookson Co. v. N.H. Ball Bearings, Inc., 147 N.H. 352, 357 (2001).  He also acknowledges that he alleges that he was an employee of Select Energy.  He argues,

[1]NEChoice suggests in a footnote in its motion to dismiss that either Massachusetts or New Hampshire law might apply in this case but asserts that Sheeler's claims would fail under the law of either state.  Generally, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state and federal procedural rules.  See 28 U.S.C.A. § 2071; Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  As a result, the court applies the choice-of-law principles of the forum state to determine which state's substantive law to apply.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941).  Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether New Hampshire law actually conflicts with the laws of the other interested states.  See Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 13 (1988).  Since it appears that no actual conflict exists as to the law of the interested states, no further analysis is required, and New Hampshire substantive law applies.

however, that he pled the claim in the alternative and that it should not be dismissed before discovery on the issue of his employment status.

A sales representative, for purposes of RSA chapter 339-E, is "an individual other than an employee, who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission." RSA 339-E:1, III. A principal is "a person who manufactures, produces, imports or distributes a product for sale to customers who purchase the product for resale; uses a sales representative to solicit orders for such product; and compensates individuals who solicit orders, in whole or in part, by commission." RSA 339-E:1, II. Commission in this context is "compensation paid a sales representative by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales of the principal's product." RSA 339-E:1, I.

Sheeler repeatedly alleges that he was an employee of Select Energy. He also alleges, however, that he was a sales representative. He states that his job was to sell and market Select Energy's products and that he was compensated with wages and commission under the Compensation Plan. He does not allege the specific terms applicable to the commission.

A plaintiff is permitted to allege claims in the alternative, even if the allegations are inconsistent or

7

contradictory.  See Fed. R. Civ. P. 8(e)(2); Rodriquez-Suris v. Montesinos, 123 F.3d 10, 20 (1st Cir. 1997).  Therefore, the inconsistencies in Sheeler's complaint as to his employment status are not dispositive.  He has alleged the minimal facts necessary to state a claim as a sales representative, as defined in RSA 339-E:1.

## II.  NEChoice's Motion to Dismiss

NEChoice contends that Sheeler's claim against it for tortious interference with contract and civil conspiracy to tortiously interfere with contract are barred by the statute of limitations.  NEChoice also contends that Sheeler does not state a tortious interference claim.  NEChoice challenges Sheeler's claim of conspiracy to effect wrongful discharge on the grounds that Sheeler was not an employee of NEChoice, that he alleges no facts to support a conspiracy theory, that the claim is untimely, and that the underlying wrongful discharge claim is without merit.

### A.  Tortious Interference with Contract

In his complaint, Sheeler alleges that NEChoice tortiously interfered with the contractual relationship between the Cape Light Compact and Select Energy and his own contractual relationship for employment and compensation with Select Energy.

8

To state a claim of tortious interference with a contractual relationship, a plaintiff must allege facts showing "that the plaintiff had a contractual relationship with a third party; that the defendants knew of the contractual relationship between the plaintiff and the third party; and that the defendants wrongfully induced the third party to breach his agreement with the plaintiff." Barrows v. Boles, 141 N.H. 382, 392-93 (1996). NEChoice argues that the claim is time-barred and fails to state a claim.[2]

### 1. The Select Energy-Cape Light Compact relationship.

To the extent Sheeler asserts a tortious interference with contract claim based on NEChoice's interference with the agreement he negotiated between Select Energy and the Cape Light Compact, he has not stated a claim. A tortious interference claim must be premised on the plaintiff's contractual relationship with a third party. See id. Because Sheeler was not a party to the agreement between Select Energy and the Cape Light Compact, NEChoice did not interfere, tortiously or

---

[2]NEChoice contends that it did not wrongfully interfere in the Select Energy-Cape Light Compact agreement because it had a pre-existing contractual right with Select Energy to approve such an agreement. See Roberts v. Gen. Motors Corp., 138 N.H. 532, 541 (1994). Based on Sheeler's allegations, taken in the proper light for a motion to dismiss, however, the validity of NEChoice's asserted right is disputed.

otherwise, with a contractual relationship between Sheeler and a third party.  Therefore, that claim is dismissed.

2.  The Compensation Plan.

Sheeler also alleges that NEChoice tortiously interfered with his contractual relationship with Select Energy under the Compensation Plan and other wage and compensation agreements. The employment relationship part of Sheeler's tortious interference claim is not clearly articulated in either the amended complaint or in his objection to the motion to dismiss. As to that part of the claim, Sheeler alleges that NEChoice knew of Sheeler's compensation agreement with Select Energy and knew that he would receive substantial "incentive compensation" from the agreement he negotiated between Select Energy and the Cape Light Compact.

Sheeler does not allege in that count that NEChoice induced Select Energy to discharge him or to fail to pay him compensation due under the Compensation Plan.[3]  Instead, Sheeler's claim appears to be that NEChoice's alleged wrongful interference with the Select Energy-Cape Light Compact deal was intended to deny

_____

[3]Sheeler alleges in Count V, civil conspiracy to effect wrongful discharge, that NEChoice assisted Select Energy in his discharge to avoid paying Sheeler the commission that would be due on the agreement he negotiated between Select Energy and the Cape Light Compact.

10

Sheeler his expected "incentive compensation" for his efforts in securing that agreement.[4]

NEChoice did not specifically address the Compensation Plan part of Sheeler's tortious interference claim in its motion to dismiss. In its reply, NEChoice contends that the claim is time-barred and that its actions were not wrongful because they were based on its pre-existing contract right, as it argued more generally in the motion to dismiss. NEChoice contends that Sheeler alleges that NEChoice's interference injured him when NEChoice asserted an approval right in May of 1999, when the contract negotiations between Select Energy and the Cape Light Compact broke down in September of 1999, or, at the latest, in November of 1999 when Select Energy notified Sheeler that he would be discharged in December. Sheeler argues that because he was excluded from the negotiations among Select Energy, the Cape Light Compact, and NEChoice after September of 1999, he did not discover the ongoing negotiations that lead to an agreement in March of 2000.

The parties agree that Sheeler's tortious interference claim is governed by RSA 508:4, I, which provides that actions "may be brought only within 3 years of the act or omission complained

---

[4]In Count V, however, Sheeler alleges that he was entitled to receive "incentive compensation" under the Compensation Plan for his part in negotiating the Select Energy-Cape Light Compact agreement even though it was never signed.

11

of." Because the statute of limitations is an affirmative defense, the defendant bears the burden of showing that it applies. Donnelly v. Eastman, 2003 WL 21488187, at * 2 (N.H. June 30, 2003). Sheeler's writ was filed in state court on December 23, 2002, making December 23, 1999, the limitations deadline. See id. (describing commencement of action under New Hampshire law).

The statute also provides a discovery rule exception:

that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I. The discovery rule, however, tolls the commencement of the limitation period only until the plaintiff is apprised of a violation of his rights and a resulting injury but not until the plaintiff discovers the full extent of his injuries. See Rowe v. John Deere, 130 N.H. 18, 22-23 (1987). The plaintiff bears the burden of showing that the discovery rule exception applies. See Dobe v. Comm'r, N.H. Dep't of Health & Human Servs., 147 N.H. 458, 461 (2002).

Based on Sheeler's allegations, he was aware by May of 1999 that NEChoice was working to scuttle the agreement he negotiated between Select Energy and the Cape Light Compact, from which he

12

expected "incentive compensation" from Select Energy. He also believed that NEChoice's interference was wrongful. By September of 1999, when the agreement and Sheeler's compensation had been delayed for several months and Sheeler was excluded from the ongoing negotiations on the agreement due to his stance against NEChoice, he knew that NEChoice's actions had injured him. Although he may not have been aware of the full extent of his alleged injury, such as that an agreement would be signed and he would not be compensated for his part in negotiating the agreement, he knew before December 23, 1999, that NEChoice had taken actions against the agreement and against him, which he now alleges in support of his claim, and that he had been injured by those actions. Therefore, that part of Sheeler's tortious interference claim based on the Compensation Plan is time-barred.

B.  <u>Conspiracy to Tortiously Interfere with Contract</u>

Sheeler alleges that Select Energy and NEChoice conspired to tortiously interfere with the agreement he negotiated between Select Energy and the Cape Light Compact to deprive him of his "incentive compensation" from the agreement. NEChoice moves to dismiss the claim on the ground that in the absence of tortious interference with contract, Sheeler cannot state a claim for civil conspiracy based on that claim.

13

"For a civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to commit." Univ. Sys. of N.H. v. U.S. Gypsum Co., 756 F. Supp. 640, 652 (D.N.H. 1991). Sheeler failed to allege a tortious interference claim based on NEChoice's actions to prevent the agreement between Select Energy and the Cape Light Compact. The part of his claim based on interference with the Select Energy Compensation Plan is time-barred, making any conspiracy to commit that tort untimely as well. Because Sheeler's underlying tortious interference with contract claim is dismissed, his claim for civil conspiracy based on tortious interference is also dismissed.

C.  Civil Conspiracy to Effect Wrongful Discharge of Employment

The elements of a civil conspiracy claim are "(1) two or more persons (including corporations); (2) an object to be accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate

14

result thereof." <u>Jay Edwards, Inc. v. Baker</u>, 130 N.H. 41, 47 (1987). NEChoice contends that no claim exists for civil conspiracy to effect wrongful discharge, that the claim is untimely, that the underlying wrongful discharge claim is meritless requiring dismissal of the conspiracy claim, and that Sheeler's allegations are insufficient to state a claim.

### 1. <u>Viability of claim for civil conspiracy to effect wrongful discharge.</u>

NEChoice relies on a decision of the California Court of Appeals, construing civil conspiracy under California law, to assert that no cause of action exists for conspiracy to effect wrongful discharge. <u>See</u> <u>Weinbaum v. Goldfarb, Whitman & Cohen</u>, 54 Cal. Rptr. 2d 462 (Cal. Ct. App. 1996). Under California law, liability under a conspiracy theory "'presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.'" <u>Id.</u> at 465 (quoting <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 869 P.2d 454, 457 (Cal. 1994)). Because only an employer may be liable for wrongful discharge, the court held that defendants other than the employer could not be liable for conspiracy to effect wrongful discharge. <u>Id.</u> at 466.

NEChoice points to no New Hampshire case that limits the law

of conspiracy in the same way.  Nor does NEChoice attempt to analogize the California law pertaining to civil conspiracy with existing New Hampshire law.  Because NEChoice chose the federal forum, by removing the case from state court, "[i]t has no right to grouse if a federal court, sitting in diversity jurisdiction, declines to push state law past previously established frontiers." U.S. Liab. Ins. Co. v. Selman, 70 F.3d 684, 693 (1st Cir. 1995).  Under these circumstances, the California court's interpretation of California law is not persuasive and does not provide a basis to dismiss the claim.

        2.  Timeliness of the claim.

        NEChoice contends that the conspiracy to effect wrongful discharge claim is untimely because Sheeler received notice on November 5, 1999, before the limitation deadline, that he would be discharged on December 26, 1999.  The actual date of termination was December 31, 1999, after the limitation deadline.  Sheeler argues that the date of termination, not the date of notice, controls the beginning of the limitation period.

        The Supreme Court has held that in discrimination cases based on an employer's discriminatory decision which lead to the employee's discharge, the claim accrues when the employee receives notice of the discriminatory decision, not when the discharge occurs.  See Chardon v. Fernandez, 454 U.S. 6, 8

16

(1981); Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980). Some courts have also applied the Chardon/Ricks rule in common law wrongful discharge cases. See, e.g., Stephenson v. Am. Dental Ass'n, 789 A.2d 1248, 1250-51 (D.C. 2002); but see Alderiso v. Med. Ctr. of Ocean County, Inc., 770 A.2d 275, 279-82 (N.J. 2001) (distinguishing Ricks and Chardon and holding that date of discharge establishes time of accrual for claim of wrongful discharge under state whistle blower statute).

The New Hampshire Supreme Court appears to have considered the Chardon/Ricks rule only once, and NEChoice cites no federal cases applying the Chardon/Ricks rule under New Hampshire law.[5] In Appeal of Pritchard, 137 N.H. 291 (1993), the supreme court considered the time limit imposed by RSA 21-I:58, I, which states that an employee may appeal an application of the personnel rules to the personnel appeals board "'within 15 calendar days of the action giving rise to the appeal.'" Id. at 293 (quoting RSA 21-I:58, I). The plaintiff contended that the period began on the

---

[5]In addition to Ricks and Chardon, NEChoice cites only a First Circuit case construing the effect of the Chardon/Ricks rule in the context of the limitation period of the Equal Credit Opportunity Act, 15 U.S.C. § 1691e(f), and an Eleventh Circuit case construing accrual of a civil rights action for conspiracy to force retirement under a Florida statute of limitations. Farrell v. Bank of N.H., 929 F.2d 871, 874 (1st Cir. 1991); Newberger v. U.S. Marshals Serv., Inc., 751 F.2d 1162 (11th Cir. 1985). Neither is persuasive, particularly in light of their inapplicability to the circumstances of this case.

17

date of her layoff, while the state argued that the period began when she received notice of the layoff.  Id.

The supreme court first held that the period began on the date of the layoff, not at the time of notice, under the plain meaning of the statute.  Id.  Although the state argued that the Ricks rule applied, the supreme court found the argument unpersuasive.  Id. at 294.  The court noted that under Ricks the unlawful employment practice complained of was discriminatory denial of tenure, not the subsequent discharge resulting from denial of tenure.  Id.  Because Prichard appealed from her layoff, not the state's initial decision to layoff employees, the Ricks rule did not apply.  Id.

Similarly, in this case, Sheeler alleges a conspiracy to effect wrongful discharge.  For purposes of the underlying wrongful discharge claim, he challenges the legality of the discharge, not the decision to discharge him.[6]  Although the alleged conspiracy necessarily would have occurred before the decision to discharge was made, no cause of action for conspiracy arose until the underlying tort, wrongful discharge, occurred. See Univ. Sys. of N.H., 756 F. Supp. at 652.  Because the act complained of in Sheeler's conspiracy to effect wrongful

_____

[6]Termination of employment, that is discharge, is an essential element of a wrongful discharge claim.  Karch v. BayBank FSB, 147 N.H. 525, 536 (2002).

18

discharge is his discharge on December 31, 1999, the claim is not time-barred.

### 3. Underlying claim for wrongful discharge.

NEChoice contends that the conspiracy claim fails because the underlying wrongful discharge claim is without merit. Specifically, NEChoice argues that Sheeler alleges an employment contract, barring a wrongful discharge claim, and fails to allege a public policy basis for the claim.

Wrongful discharge is a cause of action available to at-will employees. Cilley v. N.H. Ball Bearings, Inc., 128 N.H. 401, 405 (1986). In contrast, when an employee's terms of employment are governed by an express contract, he is limited to a breach of contract action. See Censullo v. Brenka Video, Inc., 989 F.2d 40, 42 (1st Cir. 1993). If, however, the employment contract is silent as to the duration of employment, the employee is at will, despite an express agreement as to other terms of employment. Nat'l Employment Serv. Corp. v. Olsten Staffing Serv., Inc., 145 N.H. 158, 162 (2000).

NEChoice contends that because Sheeler alleges a breach of contract claim against Select Energy and asserts the existence of an agreement in support of the public policy component of wrongful discharge, he was not an at-will employee and cannot bring a wrongful discharge claim. Sheeler alleges that the terms

19

of his compensation were governed by the Compensation Plan and other agreements. He also alleges that public policy requires an employer to adhere to the terms of an employment agreement. He does not allege that the Compensation Plan, or any other agreement with Select Energy, provided for the duration of his employment. Indeed, his breach of contract claim alleges breach of Select Energy's obligation to pay him "incentive compensation," but does not allege breach of an obligation to employ him for a certain term or not to discharge him absent certain conditions. Therefore, Sheeler's allegations do not necessarily contradict at-will employment status and do not preclude a wrongful discharge claim.

"To establish a wrongful discharge claim, a plaintiff must allege and prove that: (1) the termination of employment was motivated by bad faith, retaliation or malice; and (2) that [he] was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn." Karch, 147 N.H. at 536. Public policy includes a wide range of societal goals including safety and public welfare, protection of an at-will employee's promised compensation, and good faith reporting of reasonably perceived improper activity. See id. at 537; Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989); Cloutier v. Great Atl. & Pac. Tea Co., 121 N.H. 915, 922-23 (1981); see generally Harper v.

20

<u>Healthsource N.H., Inc.</u>, 140 N.H. 770, 775 (1996). "In most instances, it is a question for the jury whether the alleged public policy exists." <u>Cilley v. N.H. Ball Bearings</u>, 128 N.H. 401, 406 (1986).

Sheeler alleges that he was terminated, in part, because of his disclosure of fraud, misrepresentation, and collusion in the bidding process for the Cape Light Compact agreement. He also alleges that he was terminated to avoid paying him compensation, which he believed he was entitled to receive. Based on those allegations, it cannot be decided as a matter of law that Sheeler failed to allege that he was terminated for acting in a way supported by public policy or for refusing to act in a way condemned by public policy.

4. <u>Sufficiency of the conspiracy allegations.</u>

Relying on a state law pleading standard, NEChoice asserts that Sheeler's allegations of conspiracy are insufficient to maintain the claim. <u>See</u> <u>Jay Edwards, Inc.</u>, 130 N.H. at 47-48. In federal court, the forum chosen by the defendants, the Federal Rules of Civil Procedure govern the pleading standard. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." To be sure, in federal court as in state court, a claim must be supported by pertinent and non-conclusory factual allegations to avoid

21

dismissal.  See, e.g., Rosa v. Park West Bank & Trust Co., 214 F.3d 213, 216 (1st Cir. 2000); Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999); DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55-56 (1st Cir. 1999).

In the amended complaint, Sheeler alleges an ongoing relationship between NEChoice and Select Energy related to the Cape Light Compact, pertaining to the Cape Light Compact agreement.  He alleges that his discharge by Select Energy "was orchestrated and was implemented with the assistance and cooperation of NEC [NEChoice]."  Am. Compl. ¶ 90.  He further alleges that the purpose of the conspiracy was to avoid paying him "incentive compensation" he earned by negotiating the Cape Light Compact agreement.  Id.  He claims damages including lost wages and compensation and loss of business reputation.  As such, although perhaps only minimally sufficient, Sheeler alleges that NEChoice and Select Energy agreed to wrongfully terminate his employment to avoid paying him earned "incentive compensation" and that his employment was terminated, as agreed, causing him harm.  See Jay Edwards, Inc., 130 N.H. 41 at 47.


Conclusion

For the foregoing reasons, defendant Select Energy's motion to dismiss Count VII (document no. 19.5) is denied.  Defendant NEChoice's motion to dismiss all claims (document no. 20) is

22

granted as to Count III and to Count IV against NEChoice and is otherwise denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

July 28, 2003

cc:   James C. McGrath, Esquire
      Ronald J. Caron, Esquire
      William D. Pandolph, Esquire
      Thomas J. Donovan, Esquire