Compensation Appeals Board
No. 97-712

## APPEAL OF NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES

(New Hampshire Compensation Appeals Board)

August 23, 2000

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Jeffrey H. Karlin* and *Jennifer L. Murphy* on the brief, and *Mr. Karlin* orally) for the petitioner.

*Fisher & Howard*, of Dover (*Robert E. Fisher* and *Andrew P. Howard* on the brief, and *Mr. Howard* orally) for the respondent.

BRODERICK, J. The petitioner, the New Hampshire Department of Health and Human Services, appeals a decision of the New Hampshire Compensation Appeals Board (board) awarding workers' compensation benefits to the respondent, Gail Sirviris-Allen, for the disability of major depression. The board found her disability compensable under the workers' compensation statute because it was caused by employment-related stress arising from her supervisor's legitimate criticism of her work performance. We affirm.

We recite the facts as found by the board or as presented in the record. The respondent began her employment with the State of New Hampshire in February 1978 as a Clerk I. When she left her employment with the petitioner in August 1995, she had been employed as a Case Technician II for nine years. Her duties in the latter job included taking applications for food stamps, Medicare, and disability, as well as verifying information and entering it into the computer. She was also required to contact clients and follow up by letter. During her tenure, the respondent often failed to adequately fulfill her assigned work responsibilities. In 1989, due to job performance problems including inaccuracy and a poor attitude, she was transferred to a slower-paced environment. In 1992, she was given a series of performance warnings and transferred to an even less demanding position.

Her tenure was also marked by frequent medical and psychological problems. In 1993, prior to filing the claim giving rise to this action, the respondent successfully filed a workers' compensation claim for stress, and was excused from work for the months of August and September. In March 1994, she was diagnosed with clinical depression and problems related to attention deficit disorder (ADD), and excused from work for thirty days. In April 1994, she was given an additional two-week respite from work.

Upon her return in May 1994, she requested placement in a private, quiet office location to accommodate her ADD and to allow better concentration on her work. Apparently, her request was not granted. During the spring and summer, the respondent received several letters from applicants complaining about her job performance and written warnings from her employer. She testified that her supervisor criticized her for "every little thing," and that as of

April 1995, she had endured almost one year of "verbal abuse at work." On August 4, 1995, she left work due to tension and stress. She called in sick a few days later, claiming that she could not face the pressure of her work environment. Shortly thereafter, she complained to her psychiatrist of stress-related symptoms, including headaches and chest pains. In September 1996, her physician advised that she was capable of returning to work, but not to her former position.

In September 1995, the respondent filed a workers' compensation claim, claiming that she suffered a work-related stress injury resulting from disciplinary action taken against her on or about August 5, 1995. A department of labor hearing officer denied her claim, and after a *de novo* hearing, the board reversed. The board found that the respondent's ADD constituted a pre-existing weakness which caused her work performance to suffer. It also found that her supervisor's criticism, although justified, caused her major depression. Finally, the board concluded that the respondent's work-related stress, which triggered depression, headaches, and chest pain, was greater than normal, non-employment related stress. The petitioner's motion for reconsideration was denied. This appeal followed.

The petitioner argues that the board's decision should be reversed because: (1) the respondent's injury was not an "accident" within the meaning of RSA 281-A:2, XI (1999); (2) it did not "arise out of" her employment; (3) the respondent's claim did not satisfy the requirements for legal causation; and (4) for reasons of public policy, workers' compensation should not be awarded for injuries resulting from good faith criticism of an employee's job performance. We will not overturn the board's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. *See* RSA 541:13 (1997).

A compensable injury under the Workers' Compensation Law is defined as an "accidental injury or death arising out of and in the course of employment . . . ." RSA 281-A:2, XI. The statute is remedial in nature, "designed to substitute for unsatisfactory common law remedies in tort a liability without fault with limited compensation capable of ready and early determination." *Bilodeau v. Oliver Stores, Inc.*, 116 N.H. 83, 86, 352 A.2d 741, 743 (1976). Accordingly, "all reasonable doubts in the construction of the workers' compensation statutes will be liberally construed in a manner that favors the injured employee." *Petition of Abbott*, 139 N.H. 412, 416, 653 A.2d 1113, 1115 (1995).

Disability caused by cumulative work-related stress is compensable under the Workers' Compensation Law. *See New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 230, 400 A.2d 1163, 1168 (1979) (*Steinberg I*). To secure workers' compensation, however, a claimant must first show that the injury arose out of an "accidental injury or death . . . ." RSA 281-A:2, XI. It is well settled that "[t]he accidental quality of a compensable injury may consist of an unexpected effect as well as an unexpected cause. That is, even though the cause may have been routine and not accidental, a claim is compensable if the effect on the employee is unexpected." *Steinberg I*, 119 N.H. at 226, 400 A.2d at 1165. In this case, we affirm the board's determination that the respondent's major depression was an "accident" within the meaning of RSA 281-A:2, XI because the injury was an unexpected result of her supervisor's criticism. *See id.*

The petitioner's argument that the respondent's injury did not constitute an accident because "[s]tress is a natural, usual, anticipated, and expected effect of criticism" is without merit because *stress* is not the claimed accidental injury. Rather, *major depression* is the respondent's claimed injury. Such a serious mental injury constitutes an unexpected consequence of good faith criticism of an employee's performance. We decline the petitioner's invitation to replace the well-established definition of "accidental injury" under the Workers' Compensation Law, *see id.* at 226, 400 A.2d at 1165-66, with a definition of "accident" articulated in a case designed to interpret the language of a private insurance contract. *See Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 522-23, 517 A.2d 800, 802 (1986). Finally, the petitioner's reliance on a wrongful termination case, *see Jespersen v. U.S. Fidelity & Guaranty Co.*, 131 N.H. 257, 551 A.2d 530 (1988), is of no value because it has no bearing on the proper analysis of a workers' compensation claim, *see Hagerty v. Great American Ind. Co.*, 106 N.H. 425, 427, 213 A.2d 424, 425 (1965) (workers' compensation statute "create[s] rights, remedies and procedures all [its] own").

The respondent was required to establish that she suffered an injury "arising out of and in the course of employment." RSA 281-A:2, XI. The petitioner concedes that the respondent's injury arose "in the course of" her employment. Accordingly, we address the petitioner's argument that her injury did not arise out of her employment.

To demonstrate that her injury arose out of her employment, the respondent must prove that the work activity giving rise to the injury "probably caused or contributed to [her] disability" by

proving both legal and medical causation. *Appeal of Cote*, 139 N.H. 575, 578, 660 A.2d 1090, 1093 (1995); *see* R. GALWAY, NEW HAMPSHIRE WORKERS' COMPENSATION MANUAL § 2.01, at 2-1, § 4.06, at 4-9 (2d ed. 1999). Because the petitioner does not challenge the board's finding that medical causation exists, we review only its finding of legal causation.

■ Where, as here, a claimant has a preexisting disease or condition prior to employment, establishing legal causation required the respondent to "show by a preponderance of the evidence that her employment contributed something substantial to her medical condition by demonstrating that the work-related conditions presented greater risks than those encountered in her non-employment activities." *Appeal of Kehoe*, 141 N.H. 412, 416, 686 A.2d 749, 752 (1996) (quotations and brackets omitted). In other words, the claimant must show that "the employment-related stress or strain [is] greater than [that] encountered in normal nonemployment life." *Steinberg I*, 119 N.H. at 231, 400 A.2d at 1168. When reviewing the board's finding on the issue of causation, we are mindful that

> the weighing of the testimony and the assessment of its credibility [are] solely within the province of the [board]. Furthermore, when . . . there is competent medical evidence to support a determination that the decedent's employment activities were not causally related to his [injury], a reviewing court may not substitute its judgment for that of the [board] even though contrary testimony received would have supported a different result.

*New Hampshire Supply Co. v. Steinberg*, 121 N.H. 506, 509, 433 A.2d 1247, 1249 (1981) (*Steinberg II*).

The board's finding that the respondent's work-related stress was greater than normal non-employment related stress is supported by ample, competent evidence in the record. The board accepted the medical opinion of clinical psychologist Stephen J. Seeman, Ph.D., who determined that "[t]he major psychosocial stressor appears to be her supervisor in Dover, N.H.," while acknowledging that "[s]he is also pressed by economic conditions at home and responsibilities for her child." George Q. Hilton, M.D., whose opinion was also accepted by the board, treated the respondent and determined that her ADD symptoms were "aggravated by noise and commotion [at work], as well as by the apparent conflict she experiences with her immediate supervisors. . . . With regard to [the respondent's] home situation, I do not believe that this is contributing to her difficulties at work."

Relying primarily on *Dustin v. Lewis*, 99 N.H. 404, 112 A.2d 54 (1955), the petitioner argues that the respondent's injury did not arise out of her employment because it resulted from work criticism, a condition of employment which is not unique to the respondent's job. *Dustin* does not stand for the principle that injuries must arise out of a work condition that is unique to the claimant's job. In that case, an employee fainted, fell to the floor, and received a blow to the head which caused death. *See id.* at 404, 112 A.2d at 55. We affirmed the trial court's findings that "[t]here is a complete lack of evidence as to . . ., [what] may have contributed to his faint," *id.* at 406, 112 A.2d at 56, and that the floor which delivered the fatal blow was not the cause of his injury, but "merely an incident or an occasion that accompanies the injury," *id.* at 408, 112 A.2d at 57. We further observed:

> Obviously floors are a normal and customary incident in both industry and the home. The Compensation Act has not contravened the law of gravity, and discomfort in a greater or less degree is inevitably the companion of a fall. *The same consequences would probably have been forthcoming had the appellant suffered his seizure in the street or in his home.*

*Id.* (emphasis added). Accordingly, we declined to find the injury compensable because it was "in no real sense caused by any condition, risk or hazard of the employment." *Id.* We did not, as the petitioner claims, find the injury not compensable because the fall did not result from a condition peculiar to the job. Indeed, it is not a requirement of the Workers' Compensation Law that the injury be peculiar to the claimant's job. *See* R. GALWAY, NEW HAMPSHIRE WORKERS' COMPENSATION MANUAL § 2.04, at 2-8.

█ Finally, the petitioner argues that stress injuries arising from good faith criticism of an employee's job performance should be excluded from the province of the Workers' Compensation Law as a matter of public policy. We are compelled to find that such claims are presently compensable. *Cf. Steinberg I*, 119 N.H. at 230, 400 A.2d at 1166 (work-connected, sustained psychological stress can cause compensable injury); *Appeal of Chapman*, 143 N.H. 503, 727 A.2d 993 (1999) (reviewing claim for stress-related injuries arising from investigation of employee's behavior). We note, however, that "we find the result troubling and one which may involve a larger extension of liability" than our previous decisions on work-related, cumulative stress injuries. *See Kelly's Case*, 462 N.E.2d 348, 352

(Mass. Ct. App. 1984) (compensable stress-related injury arising from good faith decision to lay off and transfer employee) (superseded by statute). It is certainly debatable whether injuries arising from good faith criticism of an employee's job performance are properly within the scope of the statute. Courts that have considered the question in other jurisdictions are divided. *Compare Calovecchi v. State*, 566 N.W.2d 40 (Mich. Ct. App. 1997) (stress-related injury arising from investigation and suspension may be compensable) *with Duncan v. Employers Cas. Co.*, 823 S.W.2d 722 (Tx. Ct. App. 1992) (stress-related injury arising from reprimand and job transfer not compensable). In view of our longstanding practice "to give the broadest reasonable effect to the remedial purpose of workers' compensation laws," however, a rule barring recovery for injury caused by good faith criticism of an employee's work performance is more properly made by the legislature. *Appeal of Griffin*, 140 N.H. 650, 654, 671 A.2d 541, 543 (1996); *see* 3 A. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 56.04 [5], at 56-37 (citing Connecticut, Colorado, Maine, Massachusetts, Missouri, New Mexico, New York, North Dakota, South Carolina, Texas, and Utah as enacting legislation precluding recovery for stress-related injuries arising from good faith employment actions).

*Affirmed.*

BROCK, C.J., sat for oral argument but removed himself thereafter and from that point did not participate in this decision; JOHNSON, J., sat for oral argument but retired thereafter and from that point did not participate in this decision; THAYER, J., sat for oral argument but resigned thereafter and from that point did not participate in this decision; HORTON and BRODERICK, JJ., sat for oral argument and participated in this decision; NADEAU and DALIANIS, JJ., did not sit for oral argument but participated in this decision by consent of the parties; all who participated in this decision concurred.