Compensation Appeals Board
No. 2000-011

APPEAL OF LOCKHEED MARTIN CORPORATION

(New Hampshire Compensation Appeals Board)

December 21, 2001

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Jeffrey H. Karlin* on the brief and orally), for the petitioner.

*Normand & Shaughnessy, P.A.*, of Manchester (*Brian C. Shaughnessy* on the brief and orally), for the respondent.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Wilbur A. Glahn* on the brief), and *New England Legal Foundation*, of Boston, Massachusetts (*Cynthia L. Amara* and *Loretta M. Smith* on the brief) for Business and Industry Association of New Hampshire and New England Legal Foundation, as *amici curiae*.

NADEAU, J. The petitioner, Lockheed Martin Corporation, appeals a decision of the New Hampshire Compensation Appeals Board (CAB) awarding the respondent, Catherine House, workers' compensation benefits for multiple chemical sensitivity syndrome (MCSS). We reverse.

The following facts were found by the CAB. The respondent began working for the petitioner in June 1997. Prior to that time, she had developed MCSS. That condition manifested itself through symptoms including burning in the mouth, chest congestion, a choking sensation, headaches, and joint and stomach pain during exposure to a number of common scents such as perfumes, colognes, body lotions, hairsprays and deodorants.

After a number of uneventful months in the petitioner's employ, the respondent was transferred to corporate headquarters where she worked with eleven women in a room separated by cubicles. The respondent began to suffer symptoms of MCSS, making it almost impossible to perform her job. Despite the petitioner's attempts to accommodate the respondent, she left work on her doctor's orders for three weeks in December 1998. The

situation was eventually resolved by providing the respondent a separate room in which to work.

The respondent sought workers' compensation benefits for her three-week absence. A hearing officer determined that the respondent "met her burden of proof that she experienced an aggravation of symptoms related to pre-existing MCSS that arose out of and in the course of employment at Lockheed Martin. As a result, the [respondent] was temporarily totally disabled December 1 through December 20, 1998." The petitioner appealed to the CAB, which also found the respondent entitled to compensation. The petitioner now appeals to this court.

"We will not overturn the [CAB's] decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable." *Appeal of N.H. Dep't of Health & Human Servs.*, 145 N.H. 211, 213 (2000). RSA 281-A:28 (1999) provides for the payment of temporary total disability benefits "to an employee sustaining a personal injury" that is totally disabling, but temporary. RSA 281-A:2, XI (Supp. 2000), in turn, defines personal injury, in part, as "accidental injury or death arising out of and in the course of employment, or any occupational disease or resulting death arising out of and in the course of employment." Because occupational disease is defined to exclude a disease that pre-existed the employment, *see* RSA 281-A:2, XII (Supp. 2000), the respondent concedes that this case does not involve an occupational disease. Thus, whether the respondent is entitled to benefits depends upon whether she suffered an "accidental injury ... arising out of and in the course of employment." RSA 281-A:2, XI.

The petitioner first argues that the respondent's injury was not accidental because the symptoms she experienced "were an 'expected' and nonaccidental consequence of her preexisting disease." We agree. "It is well settled that the accidental quality of a compensable injury may consist of an unexpected effect as well as an unexpected cause. That is, even though the cause may have been routine and not accidental, a claim is compensable if the effect on the employee is unexpected." *Appeal of N.H. Dep't of Health & Human Servs.*, 145 N.H. at 214 (quotation and brackets omitted). The respondent argues that it was not her sensitivity to the odors that was unexpected but the "dramatic rise in blood pressure which poses a significant health risk that constitutes the unexpected effect."

■ We fail to find anything in the record, however, that demonstrates that the respondent's hypertension was an unexpected effect of her MCSS. Rather, the transcript of the hearing before the CAB indicates that when questioned about her experiences with MCSS prior to working for the petitioner, the respondent stated, "My blood pressure goes up is one of the

symptoms." Her testimony also indicated that at the commencement of her employment with the petitioner, she filled out a medical history form that revealed a history of high blood pressure. When asked to explain that reference, the respondent testified, "The blood pressure comes from the chemical sensitivity which I've had for that many years, that's where I got the high blood pressure from." Thus, we conclude by a clear preponderance of the evidence that high blood pressure was an expected effect of the respondent's pre-existing MCSS, and therefore the CAB's award of benefits is unreasonable.

■ We next address whether the respondent's injury "[arose] out of and in the course of employment." RSA 281-A:2, XI. To establish that her injury arose out of her employment, the respondent was required to prove that her work-related activities "probably caused or contributed to [her] disability." *Appeal of Cote*, 139 N.H. 575, 578 (1995). This requires proof of both legal and medical causation. *See id.*

> Where, as here, a claimant has a preexisting disease or condition prior to employment, establishing legal causation required the respondent to show by a preponderance of the evidence that her employment contributed something substantial to her medical condition by demonstrating that the work-related conditions presented greater risks than those encountered in her non-employment activities.

*Appeal of N.H. Dep't of Health & Human Servs.*, 145 N.H. at 215 (quotation omitted).

The petitioner argued before the CAB that the respondent did not encounter any greater risk in her employment than in her everyday life. The petitioner pointed out that the respondent is sensitive to a wide range of common odors and that she "was not exposed to odors at work anymore than she was exposed to odors outside of work when she chose to leave her house, for example, to go shopping." The CAB, however, found that the respondent, "in her testimony, placed her finger exactly on the substantial contribution of the workplace. She said it was the 'duration' of exposure to the offending scents that raised havoc." The CAB concluded that the respondent's workplace exposure differed from her everyday exposure in that she could not leave the affected area when she began to experience symptoms of MCSS.

■ We have held that in order to be compensable under our Workers' Compensation Law, an "injury must result from the conditions and obligations of the employment and not merely from the bare existence of

the employment." *Heinz v. Concord Union School Dist.*, 117 N.H. 214, 217 (1977) (quotations omitted). The respondent testified that she worked nine hours a day, which we do not find to be an abnormal workday. Accordingly, we conclude that the CAB erred in holding that the respondent proved legal causation.

*Reversed.*

DALIANIS, J., concurred; DUGGAN, J., concurred specially; BROCK, C.J., and BRODERICK, J., dissented.

DUGGAN, J., concurring specially. Because I agree that the compensation appeals board clearly erred in finding legal causation in this case, I would not address whether the claimant suffered from an "accidental injury."

BROCK, C.J., and BRODERICK, J., dissenting. Because the board's findings in this case are supported by the evidence and are not erroneous as a matter of law, we respectfully dissent.

When this court reviews decisions by the compensation appeals board, our task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record. *Appeal of Lalime*, 141 N.H. 534, 539 (1996).

The petitioner argues, and the plurality agrees, that the respondent's injury was not accidental because the symptoms she experienced "were an 'expected' and nonaccidental consequence of her preexisting disease." Because we believe that the respondent's spike in blood pressure causing her inability to work was not expected, we disagree. Her acute rise in blood pressure caused by the repeated exposure to irritants in the workplace constitutes an unexpected effect satisfying the statutory requirement of accidental injury. The board found that the respondent was able to work without incident until she was transferred to company headquarters. In her new office setting, she was exposed over a protracted period of time to fragrances to which she was acutely sensitive, causing her blood pressure to rise to a life-threatening level. "The fundamentally accidental nature of the injury is not altered by the fact that, instead of a single occurrence, it is the cumulative effect of the inhalation of . . . fumes to which a claimant is peculiarly susceptible that accelerates a claimant's pre-existing disability." *Festa v. Teleflex, Inc.*, 382 So. 2d 122, 124 (Fla. Dist. Ct. App. 1980) (citation omitted).

The majority states that the respondent did not prove legal causation because her condition arose from the "bare existence" of her employment. We disagree.

To prove legal causation, an employee with a preexisting condition must show that her employment "contributed something substantial to her medical condition by demonstrating that the work-related conditions presented greater risks than those encountered in her non-employment activities." *Kehoe*, 141 N.H. at 416. The test for legal causation does not require the claimant to prove that her disability would not have arisen but for her employment. *Appeal of Bellisle*, 144 N.H. 201, 204 (1999). That is, the employee may recover even if her disability would have occurred sometime in the future, absent any work-related contribution. *Id.* In this regard, "[e]mployers assume the risk and potential consequences of hiring an employee who has a preexisting disease, defect, or disability." *Croteau*, 139 N.H. at 538 (citation omitted).

We agree with the board that the duration of exposure to offending scents in the respondent's work environment satisfies the legal causation prong. Although the respondent was peculiarly sensitive to common fragrances, the evidence shows that her disabling symptoms were activated when she was placed in close working quarters with eleven co-workers, subjecting her to prolonged and, to her, intense exposure to their perfumes. Although she may have encountered persons wearing such perfume in her everyday life, she was not required to sustain the level and length of exposure that the work environment required. Because the record amply supports the board's finding that the respondent's work-related exposure was greater than that normally encountered in non-employment life, we find that the respondent satisfied the test of legal causation.

This result is consistent with our prior case law, which liberally construes all reasonable doubts in the Workers' Compensation Law in a manner that favors the injured employee. *Appeal of N.H. Dep't of Health and Human Servs.*, 145 N.H. 211, 213 (2000).

For the foregoing reasons, we respectfully dissent.