Hillsborough-southern judicial district
Nos. 97-038
 97-854

KAREN C. KARCH

v.

BAYBANK FSB & a.

Argued: February 9, 1999
Reargued: November 13, 2001
Opinion Issued: April 12, 2002

*Gordon R. Blakeney, Jr.,* of Concord, by brief and orally, for the plaintiff.

*Cleveland, Waters and Bass, P.A.,* of Concord (*Douglas L. Ingersoll* on the brief, and *William B. Pribis* orally), for defendants BayBank FSB and R. Elaine Gordon.

*Douglas, Robinson, Leonard & Garvey, P.C.,* of Concord (*C. Kevin Leonard* and *Charles G. Douglas, III* on the brief), for the National Employment Lawyers Association of New Hampshire, as *amicus curiae.*

BRODERICK, J. In these consolidated appeals, the plaintiff, Karen C. Karch, appeals several orders of the superior court dismissing certain claims in her first writ, denying her motion to amend, and denying her motion to compel. The plaintiff and two defendants, BayBank FSB (BayBank) and R. Elaine Gordon, bring a joint interlocutory appeal from rulings made upon the defendants' motion to dismiss the plaintiff's second writ. *See* SUP. CT. R. 8. We affirm in part, reverse in part and remand.

The plaintiff filed suit against BayBank, Gordon (a vice president of the bank) and John and Jane Doe in October 1995, alleging violations of New Hampshire's wiretapping and eavesdropping statute, wrongful discharge, invasion of privacy and intentional or negligent infliction of emotional distress. The Superior Court (*Dalianis,* J.) dismissed all claims except those alleging intentional infliction of emotional distress against Gordon, and the wiretapping and eavesdropping and invasion of privacy claims against the Does. The plaintiff's motions for reconsideration and leave to amend were denied. Thereafter, in September 1996, she filed a second writ and appealed the trial court's rulings on her first writ. Her appeal included the trial court's denial of her motion to compel Gordon to disclose the identities of the Does. At the plaintiff's request, we stayed the appeal on the first writ.

The defendants moved to dismiss the second writ claiming, among other things, that it was procedurally barred by *ERG, Inc. v. Barnes,* 137 N.H. 186 (1993). In its order on the defendants' motion, the trial court observed that the plaintiff should have appealed its adverse rulings on the first writ in lieu of filing a second writ. Nevertheless, the trial court, in the interests of judicial economy, reviewed the second writ to determine if its

amendments "cure[d] the previously inadequate allegations [of the first writ]."

Although we agree with the trial court that the plaintiff should have appealed its rulings on the first writ and not filed a new action, *ERG, Inc.,* 137 N.H. at 190, under the unique circumstances of this case we will treat the second writ as an amended writ replacing the first. We also conclude that, because the plaintiff is not entitled to maintain a second action while an identical action is pending, by filing the second writ, the plaintiff effectively withdrew her appeal on the first writ. Therefore, we do not consider any issue raised in the first appeal, including the trial court's denial of the plaintiff's motion to compel.

We recognize that this procedural construction is unusual. We believe, however, as did the trial court, that reaching the merits of the second writ best promotes judicial economy and resolves the issues before us without elevating procedure over substance. *See generally In re Proposed Rules of Civil Procedure,* 139 N.H. 512 (1995) (describing the history of procedure in New Hampshire practice and explaining the preference for substance over procedural form). Accordingly, we turn to the facts alleged in the second writ and the trial court's rulings on the defendants' motion to dismiss.

The second writ alleged the following facts. In 1990, the plaintiff began working for BayBank's predecessor in interest. For the first two years of her employment, she received positive evaluations from her supervisors. In October 1992, John and Jane Doe overheard a telephone conversation between the plaintiff and her friend, a co-worker, on their radio scanner. The conversation took place on a Saturday evening, during non-work hours, and it involved mostly personal matters; however, some observations about working at BayBank were discussed. The plaintiff and her co-worker "understood the conversation to be ... private and unrelated to the performance of their duties as bank employees."

Upon intercepting the telephone conversation, the Does encouraged their houseguests to listen to it for amusement. Subsequently, the Does reported the content of the conversation to BayBank and Gordon. Based upon the Does' disclosure, the defendants accused the plaintiff of misconduct, threatened her with termination and placed a "Counseling Statement" in her permanent personnel record. Later in the month of October, the plaintiff received a written performance evaluation that included a three-percent raise and rated her higher than had her previous reviews. The evaluation, however, also contained a warning to the plaintiff that she "limit her conversations regarding personal situations with [bank] personnel as well as customers."

Believing that the defendants were interfering illegally with her rights, the plaintiff hired an attorney who wrote a letter to Gordon alleging that the defendants had violated RSA chapter 570-A (1986) and the plaintiff's right to privacy by intercepting, disclosing and continuing to use the contents of the telephone conversation. As a remedy, counsel requested that BayBank fully inform the plaintiff of the circumstances surrounding the Does' interception of the conversation, eliminate any reference to the conversation in her personnel file, apologize and provide financial compensation for the plaintiff's "resulting distress." In response, the plaintiff's work environment became pervasively hostile. Suffering from the physical and emotional effects of stress caused by the hostile work environment, the plaintiff took a medical leave of absence in October 1993 and resigned when her leave concluded.

In its decision on the defendants' motion to dismiss the second writ, the trial court: (1) dismissed the plaintiff's wiretapping and eavesdropping, intentional infliction of emotional distress and invasion of privacy claims against BayBank on the basis that they were barred by the Workers' Compensation Law; (2) dismissed the plaintiff's negligent infliction of emotional distress claim against BayBank and Gordon as barred by the Workers' Compensation Law; (3) denied the defendants' motion to dismiss the wiretapping and eavesdropping, intentional infliction of emotional distress and invasion of privacy claims against Gordon; and (4) denied the defendants' motion to dismiss the wrongful discharge claim. These consolidated appeals followed.

■ In considering a motion to dismiss, the standard of review is "whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." *Huguelet v. Allstate Ins. Co.*, 141 N.H. 777, 779 (1997) (quotation omitted). "We assume the plaintiff's pleadings to be true and construe all reasonable inferences drawn therefrom most favorably to [her]." *Id.* We need not assume the truth of statements in the plaintiff's complaint, however, "which are merely conclusions of law." *Thompson v. Forest*, 136 N.H. 215, 216 (1992) (quotation omitted).

I

We turn first to the plaintiff's interlocutory appeal. As part of her second writ, the plaintiff alleged intentional or negligent infliction of emotional distress against BayBank and Gordon. The trial court granted the defendants' motion to dismiss both negligent infliction claims, as well as the intentional infliction claim against BayBank, on the basis that they

were barred by the exclusivity provision of the Workers' Compensation Law. *See* RSA 281-A:8, I (1999).

▮ As a general rule, any claim based upon negligence by an employer or co-employee for personal injuries arising out of or in the course of employment is barred by RSA 281-A:8, I(b). *See Thompson*, 136 N.H. at 221. The plaintiff argues that an exception exists, however, where there is an allegation of illegal activity. The statute contains no such exception, and we decline to "redraft[] legislation in order to make it conformable to an intention not fairly expressed in it." *Public Service Co. v. State*, 101 N.H. 154, 162 (1957). Therefore, we affirm the trial court's order dismissing the plaintiff's claims for negligent infliction of emotional distress against BayBank and Gordon.

Turning to the plaintiff's allegation of intentional infliction of emotional distress against BayBank, the trial court ruled that it too was barred by RSA 281-A:8, I. Because her injury was not an "accidental injury" as contemplated by the Workers' Compensation Law, the plaintiff argues that the exclusivity provision of the statute does not apply. We disagree.

An employee is entitled to compensation under the Workers' Compensation Law for "accidental injury or death arising out of and in the course of employment," RSA 281-A:2, XI, but may not bring a separate tort action against her employer. Indeed, the Workers' Compensation Law expressly provides that an employee subject to that chapter waives the right to bring such a separate action in exchange for the acceptance of benefits. RSA 281-A:8, I(a). We note, however, an employee's waiver in exchange for benefits does not bar intentional tort actions against co-employees. RSA 281-A:8, I(b).

▮ It is well settled that "the accidental quality of a compensable injury may consist of an unexpected effect as well as an unexpected cause. That is, even though the cause may have been routine and not accidental, a claim is compensable if the effect on the employee is unexpected." *Appeal of N.H. Dep't of Health and Human Servs.*, 145 N.H. 211, 214 (2000) (quotation and brackets omitted). Here, the plaintiff alleges intentional infliction of emotional distress as a result of the actions of BayBank and Gordon. Prior to the recent amendment of RSA 281-A:2, XI, we considered the type of injury alleged here compensable under the Workers' Compensation Law. *See id.* Although we recognize that the recent amendment, *see* RSA 281-A:2, XI (Supp. 2001), may yield a different result, retroactive application of the amendment is inappropriate in this case. *See Norton v. Patten*, 125 N.H. 413, 417 (1984); *Appeal of Denton*, 147 N.H 259, 261 (2001) (in workers' compensation cases, parties' rights

and liabilities determined by the law in force at the time of the injury). As such, we conclude that the plaintiff was barred from asserting a separate tort action for intentional infliction of emotional distress against BayBank under RSA 281-A:8, I(a).

 With regard to the plaintiff's claim for intentional infliction of emotional distress against Gordon, the defendants assert that the claim fails to allege that Gordon's conduct was extreme and outrageous. We disagree. The plaintiff claims that Gordon invaded her right to privacy and threatened, intimidated and retaliated against her. She also claims that Gordon abused her position of power and threatened to monitor the plaintiff's conversations and discipline her without cause or legal right to do so. Gordon allegedly continued such activity after receiving notice that the plaintiff was susceptible to emotional distress. As "[w]e assume the plaintiff's pleadings to be true and construe all reasonable inferences drawn therefrom most favorably to [her]," *Huguelet*, 141 N.H. at 779 (quotation omitted), we find that the plaintiff has stated a claim for intentional infliction of emotional distress against Gordon.

## II

Turning to the wiretapping and eavesdropping claims, RSA 570-A:11 (1986) provided that "[a]ny person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses, or uses ... such communications ...." The statute defines "person" to include, among other things, individuals and corporations. RSA 570-A:1, V.

The defendants first argue that the conversation between the plaintiff and her co-worker was not a protected wire or oral communication under the statute. Essentially, the defendants contend that RSA chapter 570-A does not protect that part of a telephone conversation that is transmitted between a base receiver and a cordless phone. As support for their position, the defendants cite cases analyzing the comparable federal statute.

 At the time of the alleged interception of the telephone conversation, RSA 570-A:1, I (1986) defined wire communication as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception." We fail to see how the plain language of this definition exempts any part of a cordless telephone conversation from the protections of RSA chapter 570-A. At the very least, a cordless telephone communication includes, in part, "the use

of facilities for the transmission of communications by the aid of wire . . . between the point of origin and the point of reception." *Id.* As such, we find that the communication alleged, "a wire communication, *i.e.*, by telephone," falls within the definition of a wire communication.

The defendants next argue that the allegations in the second writ fail to establish that the initial interception by the Does was wilful, as required by the statute. Moreover, the defendants contend that neither they nor the Does "used" the content of the intercepted conversation as contemplated by the statute. We disagree with both assertions.

In *Fischer v. Hooper*, 143 N.H. 585, 587-89 (1999), we examined the *mens rea* necessary to give rise to a violation of RSA chapter 570-A. In that case, we looked to cases interpreting the pre-1986 version of the Federal Wiretapping Statute, 18 U.S.C. § 2511(1) (1982) (amended 1986, 1994, 1996), upon which our statute is based, and concluded "that the defendant must act with an intentional or reckless disregard for the lawfulness of his conduct. In other words, the defendant has not violated [the statute] if he has a good faith belief that his conduct was lawful." *Fischer*, 143 N.H. at 589 (quotation and brackets omitted). ·

■ Here, the plaintiff alleges that the defendants acted "wilfully," defined by the plaintiff to mean that their actions "were voluntarily committed with an intent to cause their results." The second writ contains allegations that BayBank and Gordon knew that the conversation was private and that it was intercepted without the plaintiff's consent. The plaintiff alleges that BayBank and Gordon wilfully used the contents of the conversation as the basis for threatening to fire her. After receiving the first of two letters from plaintiff's counsel asserting that they were in violation of RSA chapter 570-A, BayBank and Gordon allegedly responded "by adopting a pervasively hostile and accusatory manner toward" the plaintiff. Under the standard of review for a motion to dismiss, *see Huguelet*, 141 N.H. at 779, the allegations in the plaintiff's second writ are reasonably susceptible of a construction that would permit recovery. The plaintiff has alleged facts sufficient to sustain her claim that the defendants acted with an intentional or reckless disregard for the lawfulness of their conduct. The defendants are free to argue that the interception was "inadvertent," as they argue in their brief, or that they acted with a good faith belief that their conduct was lawful. Such arguments may be pertinent to the trier of fact, but they have no bearing on whether the plaintiff has stated a claim for purposes of reviewing a motion to dismiss.

The defendants' argument that they did not "use" the content of the intercepted conversation as contemplated under RSA chapter 570-A is also

unpersuasive. The defendants maintain that "use" is meant to apply to conduct such as "using the content of the conversation in a court proceeding . . . for personal gain, and other similar conduct." We fail to see how "using" an intercepted conversation to allegedly punish or threaten an individual falls outside the defendants' understanding of the term. Further, nothing in RSA 570-A:11 or RSA 570-A:2, I (defining violations under RSA chapter 570-A) limits "use" to any particular circumstances, and we decline to "redraft[] legislation in order to make it conformable to an intention not fairly expressed in it." *Public Service Co.*, 101 N.H. at 162. We find that the plaintiff's second writ contains ample factual allegations that the Does, Gordon and BayBank intercepted, disclosed and used the plaintiff's private telephone conversation within the meaning of RSA chapter 570-A.

The defendants lastly argue that the Workers' Compensation Law bars the plaintiff's wiretapping and eavesdropping claims. We reiterate that an employee is entitled to compensation under the Workers' Compensation Law for "accidental injury or death arising out of and in the course of employment," RSA 281-A:2, XI, but may not bring a separate tort action against her employer. RSA 281-A:8, I(a). In order for peripheral or ancillary employment activities to fall within the scope of employment, the injury must (1) result from a risk created by the employment, and (2) occur (A) within the boundaries of time and space created by the terms of employment and (B) in the performance of an activity related to employment. *See Murphy v. Town of Atkinson*, 128 N.H. 641, 645-46 (1986). An activity related to employment may include personal activity if reasonably expected and not forbidden, or of mutual benefit to employer and employee. *See Hanchett v. Brezner Tanning Co.*, 107 N.H. 236, 238-39 (1966).

Here, the plaintiff alleges that "during non-work hours" she called her co-worker, a friend, to discuss "highly personal matters entirely unrelated to the bank, but [shared] some observations relating to life as bank employees." The plaintiff and her friend allegedly "understood the conversation to be entirely private and unrelated to the performance of their duties as bank employees." The plaintiff's wiretapping and eavesdropping claims against BayBank and Gordon allege, in part, that the defendants used the telephone conversation to discipline and retaliate against her. The defendants maintain that the Workers' Compensation Law presents the only avenue of redress for any alleged harm suffered by the plaintiff.

■ Although the alleged disciplinary and retaliatory actions by BayBank and Gordon occurred at the workplace, such actions flowed

directly from the use of a personal, non-work related telephone conversation that took place in the privacy of the plaintiff's home. Assuming the truth of the plaintiff's pleading, because of her participation in an activity wholly outside the boundaries of her employment, the defendants acted against the plaintiff. Concluding that the plaintiff's wiretapping and eavesdropping claims are barred by the Workers' Compensation Law would confound the essence of the requirement that a compensable injury arise out of and in the course of employment. *See* RSA 281-A:2, XI; *see also Murphy*, 128 N.H. at 645-46 (ancillary activity must occur within the boundaries of time and space created by the terms of employment). Further, we believe that the employee's waiver to bring a separate action against her employer in exchange for benefits was not intended to include the employee's right to privacy in her own home. Concluding otherwise would allow an employer to use non-work related communications occurring in the privacy of an employee's home to discipline or perhaps fire the employee, then claim an otherwise socially beneficial, remedial statute as a shield for such an invasion of privacy. We do not believe the Workers' Compensation Law was intended for such purposes and it would stretch it to the logical breaking point to reach such a conclusion. Therefore, we hold that the plaintiff's claim is not barred by the Workers' Compensation Law.

### III

The defendants also appeal the trial court's denial of their motion to dismiss the invasion of privacy claim against Gordon, arguing that the plaintiff failed to state a claim for invasion of privacy. The plaintiff counters that her writ states a claim for invasion of privacy under our ruling in *Hamberger v. Eastman*, 106 N.H. 107 (1964). According to the plaintiff, her writ alleges two types of invasion of privacy: intrusion upon her physical and mental solitude or seclusion and public disclosure of private facts. *See Hamberger*, 106 N.H. at 110. In reviewing the plaintiff's claims, we again assess "whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery," and "assume the plaintiff's pleadings to be true and construe all reasonable inferences drawn therefrom most favorably to the plaintiff." *Huguelet*, 141 N.H. at 779 (quotation omitted).

In *Hamberger*, and later in *Fischer*, 143 N.H. 585, we evaluated claims of intrusion upon a plaintiff's physical and mental solitude or seclusion and concluded, consistent with the RESTATEMENT (SECOND) OF TORTS § 652B (1977), that the intrusive conduct must be "such that [the defendant] should have realized that it would be offensive to persons of

ordinary sensibilities. It is only where the intrusion has gone beyond the limits of decency that liability accrues." *Fischer*, 143 N.H. at 590 (quotation omitted). We further recognized that "intrusion . . . is not limited to a physical invasion of [the plaintiff's home, room, or quarters, but has been] extended to eavesdropping upon private conversations by means of wire tapping and microphones." *Hamberger*, 106 N.H. at 111 (quotation omitted). Although the plaintiff arguably states such a claim against the Does, whose alleged eavesdropping may constitute such an intrusion, the plaintiff's writ contains no allegation that Gordon "intruded," as she did not engage in the alleged eavesdropping.

██ ██ We now turn to the plaintiff's argument that she states a claim for invasion of privacy by public disclosure of private facts. Like the tort of intrusion, a claim alleging disclosure involves "the invasion of something secret, secluded or private pertaining to the plaintiff"; however, unlike intrusion, disclosure "depend[s] upon publicity." *Id.* at 110-11. As explained in the RESTATEMENT, "publicity" differs from mere "publication." RESTATEMENT (SECOND) OF TORTS § 652D comment *a* at 384 (1977). While "publication" involves "any communication by the defendant to a third person," "[p]ublicity . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* Although the RESTATEMENT suggests that it is not an invasion of privacy to publicly disclose private facts to a single person or even to a small group, *id.*, we believe that determining whether a disclosure of a private matter has become one of public knowledge does not, as a matter of law, depend on the number of people told. Whether publicity is achieved by broadcasting something private to a few people or to the masses is a conclusion best reached by the trier of fact. In this case, the plaintiff alleges that "Gordon . . . willfully disclosed and shared the contents of the plaintiff's communication to and with . . . other BayBank FSB employees and/or officers." Assuming the truth of this allegation and construing all reasonable inferences therefrom in favor of the plaintiff, the claim against Gordon is reasonably susceptible of a construction that would permit recovery. *Huguelet*, 141 N.H. at 779.

██ The defendants also argue that the exclusivity provision of the Workers' Compensation Law bars the plaintiff's invasion of privacy claim. As the claim pertains to Gordon, it is an intentional tort against a co-employee, and, therefore, is not barred by the exclusivity provision. *See* RSA 281-A:8, I(b). We note that the plaintiff does not challenge the trial

court's conclusion that the claim against BayBank was barred by the Workers' Compensation Law.

## IV

■ Finally, the defendants advance several arguments challenging the trial court's denial of their motion to dismiss the plaintiff's wrongful discharge claim. To establish a wrongful discharge claim, a plaintiff must allege and prove that: (1) the termination of employment was motivated by bad faith, retaliation or malice; and (2) that she was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn. *See Wenners v. Great State Beverages*, 140 N.H. 100, 103 (1995), *cert. denied*, 516 U.S. 1119 (1996).

■■ The defendants first contend that the plaintiff failed to allege that they terminated her. Although the plaintiff did not allege that she was actually terminated, she argues that her allegations met the requirements for a constructive discharge. "Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign." *Seery v. Yale-New Haven Hosp.*, 554 A.2d 757, 761 (Conn. App. Ct. 1989) (quotation omitted). We hold that properly alleging constructive discharge satisfies the termination component of a wrongful discharge claim. Of course, the employer's actions, which render working conditions so difficult and intolerable that a reasonable person would feel forced to resign, must be motivated by bad faith, retaliation or malice. *See Wenners*, 140 N.H. at 103.

■ Here, the plaintiff alleges that she was disciplined and threatened with termination because of her private telephone conversation with a co-employee after work. In response to her request for an explanation and apology from BayBank and Gordon for invading her privacy, she alleges that her employer continually harassed her, which created an oppressive work environment. According to the plaintiff, these alleged bad faith acts by the defendants rendered her work environment so intolerable that she ultimately resigned. Assuming the truth of these allegations and construing all reasonable inferences therefrom in favor of the plaintiff, the claim against BayBank is reasonably susceptible of a construction that would permit recovery. *See Huguelet*, 141 N.H. at 779.

The defendants next assert that the plaintiff failed to allege that her discharge arose from her performing an act public policy would encourage. The plaintiff's writ alleges that she engaged an attorney "who wrote [Gordon] a letter . . . in which he took the position that Gordon, [BayBank]

and [the Does] had violated RSA ch. 570-A and [the plaintiff's] privacy rights by intercepting her conversation, and that their disclosure and continuing use of [it] against [the plaintiff] were similarly harmful and illegal." As a consequence of the plaintiff seeking to alert BayBank to these alleged violations of her privacy, the plaintiff contends that BayBank's "supervisory personnel and various co-workers retaliated" in various ways, giving rise to such a hostile work environment that she felt compelled to resign.

▓ The Whistleblowers' Protection Act, see RSA ch. 275-E (1999 & Supp. 2001), recognizes a public policy favoring the good faith reporting of reasonably perceived illegal actions of employers by employees without retaliation, even if it is ultimately determined that the employer engaged in no illegal activity. RSA 275-E:2; Appeal of Osram Sylvania, 142 N.H. 612, 617-18 (1998). The plaintiff's writ alleges her good faith report of perceived illegal activity to BayBank and retaliatory actions by BayBank resulting from her report. Such allegations are sufficient to implicate the public policy outlined in RSA 275-E:2. Our case law makes clear that the public policy violated by a wrongful discharge "can be based on statutory or nonstatutory policy." Cilley v. N.H. Ball Bearings, Inc., 128 N.H. 401, 406 (1986). Therefore, the plaintiff alleged facts from which a jury could find that she was terminated for performing an act that public policy would encourage. See Short v. School Admin. Unit 16, 136 N.H. 76, 84 (1992).

▓ BayBank also asserts that the Workers' Compensation Law bars the wrongful discharge claim. See RSA 281-A:8, I(a). We disagree. An employee subject to the statute waives the right to bring a separate action in exchange for entitlement to benefits. RSA 281-A:8, I(a). At the moment of discharge, the entitlement to benefits terminates; therefore, extending the exclusivity provision beyond termination would effectively deprive plaintiffs of a remedy without providing for compensation under the Workers' Compensation Law. This would be "a novel interpretation of the exclusivity concept which [is supported by neither] case law nor common sense." Brewer v. K.W. Thompson Tool Co., Inc., 647 F. Supp. 1562, 1565 (D.N.H. 1986). Further, it would contravene the requirement of the Workers' Compensation Law that the injury arise out of and in the course of employment. See Fulco v. Norwich Roman Cath. Diocesan, 609 A.2d 1034, 1039 (Conn. App. Ct. 1992), aff'd, 627 A.2d 931 (Conn. 1993). The better approach is to allow plaintiffs to allege wrongful discharge and recover for those injuries occurring after termination of the employment relationship. We note the recent amendments to RSA 281-A:8 (2001) and recognize that our decision is limited to the present case.

## V

In summary, we affirm the trial court's rulings regarding the negligent or intentional infliction of emotional distress claim, the invasion of privacy claim, the wrongful discharge claim and the wiretap and eavesdropping claims against Gordon. We reverse, however, the trial court's dismissal of the wiretapping and eavesdropping claims against BayBank.

*Affirmed in part; reversed in part; remanded.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.